97  694
112  446

# Raisin Fertilizer Co. *v.* J. J. Barrow, Jr. Co.

### *Assumpsit.*

1. *Damages for breach of contract to deliver goods intended for sale.* In an action to recover the price of guano sold and delivered, when the defendant sets up by way of recoupment the failure of plaintiff to deliver 200 tons contracted for and the evidence does not show that defendant sold the guano to responsible parties or the cost of transporting the guano from the point of delivery to defendant's customers, or whether the guano was sold for cash or on time, or the market value of the guano, there is no sufficient data by which to estimate damages to recoup against plaintiff's demand.

2. *Water transportation as a term in contract.*—When a contract binds a party to deliver goods "water transportation permitting" at a point on a river and it is shown that no boat navigated the stream during the time contemplated for delivery capable of carrying the goods, he is excused from making delivery if without fault on his part.

3. *Burden of proof of excuse for non-delivery* —The burden of proving an exception embraced in the terms of a contract in an action for failure to deliver goods is on the party seeking to avail himself of such exception.

4. *Vague and indefinite charge properly refused.*—In such case a charge which asserts that if the party made every effort to deliver the goods and failed, he was not liable, no matter what was the cause of the failure, is properly refused as being indefinite.

5 *Offer of means of transportation.*—Where a contract by a seller to deliver goods is conditioned on the ability to procure water transportation, evidence of an offer by the buyer to the agent of the seller to furnish transportation will not place the seller in fault unless it is further shown that the agent had authority to deliver and that the offer was made before the time for the delivery of the goods had expired.

APPEAL from Barbour Circuit Court.

Tried before Hon. J. M. CARMICHAEL.

Action by the Raisin Fertilizer Company against the J. J. Barrow, Jr. Company, to recover for goods sold and delivered to defendant. All the facts are sufficiently stated in the opinion. The plaintiff requested the court to give the following written charges, and separately excepted to the court's refusal to give each of them as asked: (1.) "If the plaintiff made every effort to deliver the guano and then failed to do so, defendant can recover no damages, no matter what was the cause of the failure to deliver the guano by plaintiff." (2.) " The court charges the jury that the burden of proof is upon the defendant to reasonably satisfy the jury that Cone-

[Raisin Fertilizer Co. v. J. J. Barrow, Jr. Co.]

cuh river was in a boatable condition during the term covered by the contract." (3.) "The court charges the jury that, if no boat was on the Conecuh river from the time of the making of the contract to the 1st of May, 1888, then your verdict will be for plaintiff." (4.) " If the jury believe the evidence, they will find for the plaintiff." At the request of the defendant, the court gave the following written charge to the jury, to which the plaintiff duly excepted. " If the jury believe from the evidence that the plaintiff could have delivered the 300 tons of guano, water transportation permitting, and failed to do so, it is liable to defendant in such amount of damages as they have sustained by such failure"

M. E. MILLIGAN, for appellant.

A. H. THOMAS, and WATTS & SON, for appellee.

HEAD, J.—The plaintiff, appellant here, sued the defendants, declaring in the common counts, among them the count for the goods sold and delivered. As shown by the minute entry, issue was joined on the plea of the general issue alone. Plaintiff introduced in evidence an itemized verified account, under the statute, showing defendants were indebted to it in the sum of $1,050.00, due December 1, 1888, and rested. There was no evidence relative to the issue joined as above stated, introduced by the defendant, tending to impeach the correctness of plaintiff's account, and if the case had stopped here, plaintiff was, without more, entitled to the general affirmative charge which it requested, and which the court refused.

But the bill of exceptions shows that the parties, voluntarily, made up and tried, without pleadings, another issue, upon a counter claim in recoupment of damages, the details of which will be presently explained. We will, therefore, consider, as in the record and issue joined thereon, a plea of recoupment, with all averments necessary to make the case which the evidence tends to support.

The plaintiffs' claim is for thirty-five tons of fertilizer sold and delivered, at $30.00 per ton. The defendants show a special contract, in writing, between the parties, entered into July 16, 1887, by which plaintiff agreed to deliver to defendant (water transportation permitting) at Cameron's Landing and other landings on Conecuh River, Ala., three hundred tons of soluble Sea Island Guano, and other brands of plaintiffs' manufacture ; and defendants agreed, on receipt of same, to make and deliver to plaintiff certain notes of

equal amounts, one due and payable Nov. 1, 1888, another Nov. 15, 1888, and a third Dec. 1, 1888, all at the First National Bank of Mobile, Ala.; by which notes defendants should promise to pay plaintiff or bearer $30.00 per ton for "soluble Sea Island *et al*," or in lieu of said notes, payment in cash on May 1, 1888, at $28.00 per ton for said guano, delivered as above described. And it was stipulated that plaintiff should have the benefit, by way of collateral security, of all notes or obligations which defendants might take from their customers for the price of said fertilizer when sold. Defendants agreed also to handle plaintiffs' guano exclusively.

Plaintiff delivered, under this contract, only the thirty-five tons sued for in this action, and defendants claim special damages for its failure to deliver the residue; and introduced evidence that they had contracted for the sale of about 200 tons of this guano at $36.00 per ton. This is all the evidence in the case touching the measure of damages they sustained by the alleged breach. Defendants did business at Cameron, Ala. Plaintiff's obligation was to deliver at "Cameron's Landing and other landings on Conecuh River, Ala." There is no proof of the cost of transportation from these landings to defendants' place of business, where, we must presume, they were to deliver the 200 tons contracted to be sold to customers; nor is there any proof of the market value of the fertilizer, at the landings, at the time it is claimed plaintiff ought to have delivered it; nor is there any proof that the 200 tons were contracted to be sold to solvent and responsible persons, who could, by process of law, have been coerced to respond in damages for failure to perform their agreements to purchase; nor whether the goods were to be sold to the customers for cash or on time. In this state of the record, we are forced to hold that no sufficient data are shown by which the jury could legally ascertain whether defendants were damaged or not; or if they were, the amount of such damage. There being no dispute that they received and accepted thirty-five tons, and failing to show sufficient evidence of damage by reason of plaintiff's alleged failure to deliver the rest, the plaintiff was entitled to the general affirmative charge which it requested.

There was evidence, on the part of defendants, tending to show that water transportation permitted the due delivery of the fertilizer by plaintiff, according to the contract, and evidence, on the part of plaintiff, to the contrary. The statement in Tillis' deposition that the "Mary Alice made one trip last year" was properly excluded, for the reason that it

is not shown what was meant by "last year." The date of the deposition is not given. The trial occurred in 1891. If "last year" was after the fertilizer should have been delivered, the statement was irrelevant.

We can see no necessity for plaintiff to prove that the boats on the river were reasonably adapted to the river. If plaintiff could not deliver the fertilizer because of low water, or because boats did not run, or because the boats which attempted to run were not adapted to the river, then, in either event, it comes within the exception of the contract. Plaintiff nowhere contracted to furnish river facilities of transportation, but expressly guarded against doing so. The term "water transportation permitting," in the contract, implies not only that the water shall be adequate, but that a boat or boats should ply the stream, within the time contemplated for delivery, capable of carrying the goods. If either of these conditions was absent, it matters not from what cause, unless by the fault of plaintiff or its authorized agent, plaintiff was excused from making the delivery. The statement of the witness Tillis, therefore, that the boats were reasonably adapted to the river was more favorable to defendants than plaintiff, and the latter can not complain of its exclusion.

The defendants' objections to portions of W. J. Hudson's testimony were clearly well taken. The testimony attempted to add to or vary the terms of the written contract, which is not allowable.

The first charge requested by plaintiff is too general and indefinite. It should have read, "If plaintiff made every reasonable effort in his power to deliver the guano, and failed to do so because the river transportation did not permit, defendants can recover no damages, no matter what caused the failure of river transportation, whether low water, or failure of boats to run, or failure of boats adapted to the river to run, unless such failure was caused by the fault of the plaintiff.

The second charge requested by plaintiff was properly refused. The contract was to deliver the fertilizer, water transportation permitting. Whether water transportation permitted or not, was, or could have been, as well known to, and as easily established by the plaintiff as the defendants. If the plaintiff would excuse the non-delivery, it should show its excuse. The burden of proof, therefore, was on the plaintiff to show that river transportation did not permit the delivery.— *Garnett v. Yoe*, 17 Ala. 74.

The contract does not expressly stipulate the time of its

performance on the part of the plaintiff. In such case the general rule is, that it must be performed within a reasonable time; and it is generally a question for the jury to determine what constitutes a reasonable time. In this case, however, it is manifest, from the contract itself, that the parties did not contemplate performance at a later period than May 1, 1888. This, we think, is rendered certain by the provision for payment in cash on May 1, 1888, at a reduced price, "for said guano delivered as above described." The third charge, therefore, would have been proper, but for the testimony of J. J. Barrow that he had a conversation with W. J. Hudson, about the last of February or first of March, 1888, about the delivery of the goods named in the contract, and Hudson said he had no boat and could not deliver them; to which witness replied: "If you will deliver the goods to me I will take my boat back to Conecuh river and carry them up the river and deliver them. To this Hudson made no reply, but walked off." The bill of exceptions recites that the witness, Barrow, then owned the steamboat, Lena C., of about thirty-five tons burthen, which remained on the Choctawhatchie river. Taking this conversation to have occurred as the witness states, several inquiries, pertinent to the rights of the parties, arise from it:

(1.) Was Hudson, at the time it occurred, the authorized agent of plaintiff to act for it, in and about the shipment and delivery of the goods to defendants?

(2.) Was Barrow, at that time, able and ready to furnish and put on the Conecuh river, a boat capable of navigating the river, in its then condition, sufficient to safely carry and deliver, at the landings described in the contract, the goods agreed to be delivered; and was his offer to do so made in good faith, and would it have been carried out if accepted by Hudson?

(3.) Did Hudson's conduct, in response to the proposition, amount to a rejection of the offer?

(4.) At the time of the conversation, had a reasonable time for the delivery of the goods, according to the contemplation of the parties at the time the contract was made, as ascertained from the contract itself and the attendant circumstances, then expired?

If the first, second and third of these inquiries are answered by the jury in the affirmative, and the fourth in the negative, then plaintiff ought to be held responsible for the non-delivery of the goods. If either of the first, second or third inquiries is answered in the negative, or the fourth in the affirmative, then the conversation with Barrow amounts

[Raisin Fertilizer Co. v. J. J. Barrow, Jr. Co.]

to nothing, in the case, in so far as his offer to provide transportation facilities on the river is concerned. To formulate more plainly the principles stated : If Hudson was only agent of plaintiff to make contracts of sales, and not to deliver the goods sold, no subsequent act or statement of his in reference to delivery would affect or bind plaintiff; but if he was the authorized agent in respect of making delivery, and yet Barrow, at the time the conversation occurred, was not able and ready to put on the Conecuh river, capable of navigating the river, in its then condition, sufficient to safely carry and deliver the goods, at the landings described in the contract, according to the intent and meaning of the contract, and would not have done so if the offer had been accepted; or if Hudson's conduct did not amount to a rejection of the offer, and the goods would have been delivered if the boat had been put upon the river; or if at the time of the conversation a reasonable time, as contemplated by the parties, as ascertained from the contract and attendant circumstances, for the delivery of the goods, had expired, then in either of these events, the offer made by Barrow can not affect the plaintiff. But, if the reverse of these propositions is true, then plaintiff ought to have availed itself of the means of transportation so afforded, and delivered the goods.

In view of what we have said, the third charge requested by plaintiff was improper.

The first charge requested by defendants was faulty, in that it does not limit the time of delivery to a reasonable time after the making of the contract, as ascertained by the contract itself, in connection with the attendant circumstances ; and for the further reason, as we have said, that the record, as now presented, shows no sufficient evidence that defendants sustained any damage.

There is nothing in the argument of defendants' counsel that if plaintiff broke its contract by failing to deliver the residue, it can not recover for that actually delivered by reason of such breach. Defendants received and accepted thirty-five tons, and in the absence of evidence to the contrary, we must presume they appropriated them. In such case, the plaintiff, though it may have been in fault, in failing to deliver the rest, can recover for that delivered, upon the common counts, as upon a *quantum valebat*. The unimpeached and uncontradicted, verified account introduced in evidence, under the statute, made out the plaintiff's case, as to the sale and delivery of the thirty-five tons and their value.

[Wheeler v. Glasgow.]

The judgment of the Circuit Court is reversed and the cause is remanded.

Reversed and remanded.