[Watson v. Kirby & Sons.]

# Watson v. Kirby & Sons.

*Action of Assumpsit.*

1. *Contract to deliver entire lot of property; construction thereof; when recovery for part delivery.*—Where the terms of a contract disclose an agreement to deliver an entire lot of personal property, a partial delivery only is not a compliance with the contract; but if the vendee accepts and appropriates the partial delivery, he is liable to account for its value under a common count for goods sold and delivered.

2. *Same; same; case at bar.*—In an action of assumpsit to recover the contract price of logs sold and delivered, it was shown that plaintiff agreed to deliver a certain lot of logs at a certain place for a specified price, the same to be measured after delivery by a certain measure, and paid for when measured "subject to regular inspection as to damage, flaws, &c." The defendants inspected the lot before buying, and it was estimated that the lot contained from 200,000 to 300,000 feet. *Held:* that the agreement was not to deliver the estimated number of feet, but to sell the particular lot identified by and known to the parties, regardless of the number of feet it contained; there being neither averment nor proof that the estimate was made in bad faith or with intent to defraud.

3. *Same; partial delivery; case at bar.*—In such a case, if the vendor made partial delivery of the logs sold, and the vendee accepted and appropriated them, the latter thereby became responsible to account therefor, though the rest of the logs in the lot purchased were not delivered by reason of the plaintiff's fault.

4. *Construction of written contract; admissibility of parol evidence.* Although prior or contemporaneous statements, which add to or vary the effect of a written contract, are not admissible in evidence, this rule does not exclude, in the construction of a contract, evidence of the circumstances and situations of the parties when the contract was made, nor the right to explain by oral testimony latent ambiguities, nor evidence of a subsequent modification or waiver by acts or words.

5. *Sale of lot of logs; right to repudiate contract.*—Where a person purchases a particular designated lot of logs to be delivered at a certain place, and there measured according to a certain measure, and which were to be paid for at so much per thousand feet, "subject to inspection for damage, flaws, &c.," there being in the contract no reference as to the quality of the logs, which were inspected by the purchaser before delivery, such purchaser can not refuse to accept the logs because they were damaged and not merchantable; these facts being matters to be considered only in the measurement and inspection after delivery.

[Watson v. Kirby & Sons.]

6. *Contract of sale; non-delivery or delay; measure of damages; recoupment.*—Under a contract to deliver personal property, if there is a failure of or a delay in delivery by vendor's fault, not waived by vendee, the latter may recoup such damages as proximately result from such failure or delay ; but it is the vendee's duty to purchase like property elsewhere as expeditiously and cheaply as he reasonably can, if practicable, in which event the measure of damages is the excess of cost of re-purchase over the original contract price, and such reasonable expense as is necessarily incurred in procuring the property.

7. *Same; same; facts of this case.*—In an action to recover the price of logs sold under a contract, where plaintiff failed to deliver the logs purchased at the time and in the quantity contracted for by defendant, mill owners, thereby causing the cessation of operations at defendants' mill, it was defendants' duty to obtain logs elsewhere as expeditiously and cheaply as they reasonably could to take the place of those due from plaintiff, if such course was practicable, and they could then hold plaintiff responsible, if he was at fault, for the excess of cost, over the contract price of plaintiff's logs, and such reasonable expenses as were necessarily incurred in procuring them.

8. *Same.*—If plaintiff failed to deliver the logs at the time and in the quantity contracted for, and if defendants could reasonably have expected early delivery of the residue of the logs, they might reasonably have kept their teams and laborers unemployed for a short period at plaintiff's cost, provided they show that they lost by the suspension of their mill operations ; but if it appears that the delivery of the logs was not to be expected, defendants had no right to incur expenses in holding their teams and laborers in idleness while awaiting such delivery, and charge the same to plaintiff.

9. *Contract to deliver logs for mill; damages from idle labor; interest on plant.*—If by the vendor's fault, not waived, there was delay in delivery of the logs for vendee's mill, and the vendee was unable to purchase logs elsewhere, and under the circumstances could reasonably have expected an early delivery, he had the right to keep his labor unemployed for a reasonable length of time, and charge the cost to the vendor, provided there is proof of loss by reason of such stoppage ; or interest on the value of the mill plant for the time it thus remained idle would not, under the circumstances, be objectionable as a measure of redress.

10. *Same; delay in delivery; general profits; recoupment.* — Where vendees' mill is forced to remain idle for ten days, under such circumstances the general profits for so short a period are too speculative to be the subject of recoupment.

11. *Pleadings; striking replications; when proper.* — When replications to pleas set up no special matter of reply, they are properly stricken from the file.

[Watson v. Kirby & Sons.]

APPEAL from the Circuit Court of Colbert.

Tried before the Hon. THOMAS R. ROULHAC.

This was an action of assumpsit, brought by the appellant, C. L. Watson, against William Kirby, Albert Kirby, Charles E. Smith and E. M. Perry, partners doing business under the name and style of Kirby & Sons. The facts of the case are sufficiently stated in the opinion.

The cause was tried by the court without the intervention of a jury, and upon the hearing of all the evidence, the court found for the defendants, and rendered judgment on the several pleas in their favor, for $127.37. The plaintiff appeals, and assigns as error the several rulings of the trial court to which exceptions were reserved.

KIRK & ALMON, and CANDLER & CANDLER, for appellants.—1. "Where a contract to deliver goods at a certain time is broken, the proper measure of damages is the difference between the contract prices and the market price of such goods at the time when the contract is broken, because the purchaser having the money in his hands may go into the market and buy."—Benjamin on Sales, pp. 972-3 ; 5 Amer. & Eng. Encyc. of Law, 30. "When a contract of sale is broken—the price not having been paid in advance—by the failure of the vendor to deliver them according to the terms of the contract, as a general rule, the measure of the damages the vendee is entitled to recover is the difference between the contract price and the market value of the goods at the time and place of delivery with interest."—*Penn v. Smith*, 104 Ala. 445 ; *Young v. Cureton*, 87 Ala. 727 ; *Bell v. Reynolds*, 78 Ala. 511 ; 5 Amer. & Eng. Encyc. of Law, 30, n. 2.

2. Anticipated profits are not recoverable unless the seller knows the buyer has an existing contract of resale.—*Penn v. Smith, supra* ; *Wetmore v. Pattison*, 45 Mich. 439 ; 5 Amer. & Eng. Encyc. of Law, 31, note "Re-sale." The profits defendants expected to make by sawing logs can not be set up by recoupment in this case. Authorities, *supra* ; 5 Amer. & Eng. Encyc. of Law, 34 ; *V. & M. R. R. Co. v. Ragsdale*, 46 Miss. 459.

3. "Warranty of quality has never been implied where the article was open to inspection of the vendee

before the purchase."—*Barnett v. Stanton*, 2 Ala. 182; *Anderson v. Burnett*, 5 Howard (Miss.) 165; 10 Amer. & Eng. Encyc. of Law, 127, § 28. "Where the parties have contracted that the property sold shall undergo a certain examination or inspection before the sale is complete, and the purchaser receives it and uses it before inspecting it, he is chargeable with the price of it, and can not afterwards say the quality was not what he contracted for.—*Gachet v. Warren*, 72 Ala. 288; 10 Amer. & Eng. Encyc. of Law, 136, "Sales on Inspection," and notes.

4. Plaintiff insists that defendants, having purchased the logs after examining them, can not refuse to pay for them.—*Barnett v. Stanton*, 2 Ala. 186; *Gachet v. Warren*, 72 Ala. 288; *Wilcox v. Henderson*, 64 Ala. 535.

5. Plaintiff complied with the contract when the logs reached the boom within the time stipulated. The defendants had the right after the logs reached the boom to inspect them, and if they were not satisfactory, to reject them, but having inspected them and used them, they are required to pay for them.— *Wilcox v. Henderson*, 64 Ala. 535; *Tabor v. Peters*, 74 Ala. 90; *Gachet v. Warren*, 72 Ala. 28.

THOS. G. JONES and E. L. JONES, *contra.*

HEAD, J.—Assumpsit by appellant for contract price of logs sold and delivered. Tried without a jury. The first, second, third, and sixth pleas are in recoupment. The replications (not including the eighth) set up no special matter of reply, and were well stricken from the file.

The first plea sets out a contract between plaintiff and defendants in writing as follows:

"NOVEMBER 6th, 1894.

"Know all men by these presents that I, C. L. Watson, do hereby agree to put a certain lot of poplar logs now in Bear River into the boom at Watson and Hughes' mill for Wm. Kirby & Sons for the sum of $5.00 per thousand feet, Scribner measure, subject to regular inspection as to damage, flaws, &c. I further agree with said Kirby & Sons to put the logs there just as soon as the stage of the water will permit them to be run. It is further agreed and understood that the said price, $5.00 per thousand feet, shall be due and payable as soon as

said logs are inspected and measured in the boom, which shall be done immediately on their delivery in the boom. Said logs estimated to be between 200,000 and 300,000 feet, which are cut and ready to be run, when the water rises sufficiently.

"(Signed)     C. L. WATSON."

"Attest:    J. W. JOURDAN."

and alleges, as breach, delay in delivering the logs so agreed to be delivered, assigning special damages resulting from the breach which defendants offer to recoup.

The second sets up generally a contract to deliver defendants from 200,000 to 300,000 feet of poplar logs at $5.00 per 1,000 feet, when the stage of the water would permit them to be run; averring total failure and refusal to deliver the logs and consequent general damages, $1,000, offered to be recouped.

The third is, in effect, the same as the first.

The fifth (there is no fourth) pleads, in bar of the action, that plaintiff agreed and contracted to deliver to defendants good logs for lumber; that the logs delivered were not good, but on the contrary, were very inferior and defective, and not such as were agreed to be delivered, and not worth more than $1.50 per thousand.

The sixth sets up the said written contract set out in first plea; construes it to mean that plaintiff promised to deliver defendants between 200,000 and 300,000 feet of *merchantable* poplar logs to be sawn by defendants into lumber for sale, and avers total failure to deliver any merchantable poplar logs, and assigning special damages for the breach, offered to be recouped. The several pleas of recoupment claimed judgment over for excess of damages.

The replications, except the eighth, were (properly as we have said) stricken from the file on motion of defendants. The eighth was interposed, it seems, to the sixth plea, and was as follows: "That defendants failed and refused to pay him for the 200,000 feet of logs that were put into the boom and accepted by them."

The judgment entry recites that issue was joined on the complaint, the pleas and the replication.

The court found for the defendants, and rendered judgment over, on the special pleas, in their favor for $127.37.

We see from this statement of the case, that the first issue for the determination of the court was that joined on the eighth special replication. Without undertaking to define just what that replication means, we find no support for it in the evidence. There was no evidence that 200,000 feet of logs were put into the boom and accepted by the defendants.

This then left the case to stand upon issues joined upon the plea of the general issue and the special pleas. The evidence under the general issue, shows that the logs for which plaintiff sues, were delivered under a special contract to deliver an entire lot of logs, in a certain boom, at a specified price agreed upon. It is not disputed that a part only of the lot of logs sold was delivered in the boom by the plaintiff. If the case stopped here, he would, therefore, not be entitled to recover on this complaint. But the undisputed evidence shows that the plaintiff delivered in the boom 116,000 feet, at least, of the logs sold, which the defendants, without awaiting the delivery of the residue, received, accepted and appropriated to their own use. They thus became liable to account to the plaintiff for the same, upon a *quantum valebat*, construing the complaint, as we do, from its statement in the abstract, to be a common count for goods sold and delivered.

The plaintiff was, therefore, entitled to a judgment, unless his demand was overcome by the defense of recoupment.

In reference to the value of the logs so delivered and accepted, it may be said there was evidence from which a jury, or the court sitting in the place of a jury, as in this case, might ascertain the value. The contract price is in evidence, and there are, perhaps, other pertinent facts which shed some light upon the inquiry. But the record leaves the question in a very unsatisfactory condition. The contract price, for the logs delivered and accepted is not, necessarily, controlling. The plaintiff did not fully perform his contract, and he has preferred no complaint, setting up the terms of the contract and averring his non-performance thereof in full by reason of any default or misconduct of the defendants, or otherwise justifying it. He is not entitled, therefore, to stand upon the special terms of the contract, in reference to his right of recovery. He can recover, as we

have said, only because the defendant voluntarily accepted his property, and thereby placed themselves under the duty of paying him therefor what it was reasonably worth. It is evident the case was not tried below with reference to these principles, and whatever evidence there was tending to show the real value of the logs actually accepted by the defendants, arose incidentally to other issues. We will, therefore, not undertake to assess the value here, but as the judgment must be reversed for other causes, will remand the cause that evidence may be directed to the question itself, if the case is again so presented on another trial, as to render it necessary.

We have, as has been seen, set out the several pleas of recoupment. Upon the trial below, the controversy was mainly directed to the issues joined upon these pleas. For the guidance of the court on another trial, we will state some general principles covering, substantially, the questions raised by the bill of exceptions upon those issues. In these pleas, or some of them, and by proof thereunder, the written contract is brought to view, and breaches of its terms by the plaintiff are relied on by the defendants as the bases of damages sought to be recouped. This contract is complete, in itself, and must be regarded as the sole memorial of the agreement of the parties as then made. Prior or contemporaneous statements or stipulations which add to, or vary the effect of the writing cannot be received. The rule, of course, does not exclude consideration of the situation and circumstances of the parties when the contract was made, nor the right to explain latent ambiguities in the writing; for instance, the meaning of "Scribner measure," and "regular inspection as to damage, flaws &c." So, the acts and declarations of the parties going to show location, examination and identification of the logs agreed to be sold, may be shown. Any subsequent waiver or modification of any provision of the contract by acts or words may be shown.

The defendants seem to misconstrue the contract. It was not an agreement to sell and deliver from 200,000 to 300,000 feet of logs, merchantable or otherwise. It was to sell and deliver, in the manner indicated, a particular lot of logs already procured, and particularly identified and known to the parties. The defendants

[Watson v. Kirby & Sons.]

purchased this particular lot, whatever it might contain—no more, no less. It is true it was estimated in the contract to contain between 200,000 and 300,000 feet, but that was a mere estimate made by the parties, which, in the absence of averment and proof to the contrary, must be taken to have been made in good faith, with no intent to deceive or defraud; and though it may have proven erroneous furnishes no legal cause of complaint. In fact, pending negotiation, the defendants, before they would conclude to bargain, went and personally inspected the logs to their own satisfaction, and evidently acted upon their own judgment as to their character and quantity. It was the duty of the plaintiff to deliver the particular lot of logs, in the designated boom, as soon as the stage of the water in Bear river would permit them to be run, and when all were in the boom they were to be there measured according to Scribner measure, and then and there, as logs, (not as lumber after being sawn), subjected to regular inspection as to damage, flaws, &c., whatever these tests may be shown to mean; and by such measurement and inspection, the number of feet the logs contained was to be ascertained, and for the same the defendants were required to pay $5.00 per 1,000 feet, be the same more or less than the estimated number of feet. As already stated, it was competent for the parties to waive or modify any of these terms. For instance, as we have said, if plaintiff made partial delivery of the logs sold, and defendants accepted and appropriated them, they placed themselves under obligation to account for them, even though the rest were not delivered by the fault of the plaintiff.

The defendants gave evidence tending to show actionable failure on the part of the plaintiff to deliver the logs according to agreement. The plaintiff gave evidence tending to show that he was in no default—that all logs were delivered which could have been, in view of the condition of the river, up to the time defendants abandoned the mill and left the State; and further that defendants expressly repudiated the contract and gave plaintiff notice that they would not receive the logs because they were damaged, up to which time plaintiff had been in default in respect of the delivery. In reference to the repudiation, it was undisputed, indeed, it was testified to by defendant, Perry, himself, "that he

refused to take the logs under the contract, when he saw they were damaged, and had written Watson and told Jourdan so,'' (Jourdan was plaintiff's agent in the matter of the delivery of the logs) ; and one of the principal contentions to which the trial was devoted seems to have been upon the question whether the logs were *damaged* or whether they were *merchantable*. It does not appear when this repudiation by Perry occurred. It seems really from the developments of the bill of exceptions, not to have been regarded of special moment. It is clear, as we have already said, that the defendants had no right to refuse the logs because they were damaged, or not merchantable. Those were matters to be considered only in the measurement, after delivery. They purchased the identical logs as and for what they were, good or bad, to be measured according to ''Scribner measure,'' whatever that may mean, and subject to ''regular inspection as to damage, flaws, &c.,'' whatever that may mean. So that, if plaintiff was in no default up to the time of that repudiation, upon which a breach of his agreement can be legally predicated, the defendants can take nothing by their special pleas. It may be material also to inquire on another trial, whether or not the repudiation was made at a time and under circumstances, that the resting of it upon the damaged condition of the logs, was a waiver of all other defaults on the part of the plaintiff. So far as the record discloses there seems to have been no disavowal of the contract by the defendants on any other account, and no claim for damages against the plaintiff seems to have been brought forward by the defendants at any time until suit brought; but on the contrary they offered to pay the plaintiff a specified sum for the logs they received, and did pay $100 on account thereof. Perry sent plaintiff a statement showing defendants owed him a balance of $104 for the logs—that being the sum he offered to pay. This was evidently after defendants had abandoned the mill, and to that point no claim for damages for a breach of the contract had been preferred by the defendants.

If there was non-delivery, or delay in delivery, of the logs, or any of them, by the fault of the plaintiff not waived by the defendants, and defendants aver and prove that at the time they ought to have been delivered,

they were ready and able to receive and pay for the same, the plaintiff thereby became liable to the defendants for such damages as they proximately sustained by the non-delivery or delay. Most clearly such damages do not include moneys invested or expended by defendants in establishing or improving their plant and appurtenances, nor keeping them in repair ; nor money invested in mules and horses to be used in the business. If it was practicable for defendants to obtain logs elsewhere to take the place of those due from the plaintiff, it was their duty to do so as expeditiously and cheaply as they reasonably could, and hold the plaintiff responsible, if he was at fault, for the excess of cost over the contract price of plaintiff's logs, and such reasonable expense and loss as were necessarily incurred in procuring them. It was no excuse, (as the fact was testified to by one of the defendants), that there were no logs for sale *at the mill*, if by making effort, in a reasonable and business-like way, they could have obtained them on better terms than to let the mill stand idle indefinitely. As the case is now presented, they seem to have made no effort whatever in that direction, though they maintain the theory that the river was in condition from early in January until June, for the transportation of logs ; and the testimony of a number of witnesses went to show there was no difficulty in obtaining all the logs desired when the river was in that condition. These are questions to be settled in a practical way, looking at all the circumstances.

If it be determined that the plaintiff, by his fault, not waived, failed or delayed to deliver the logs, and that defendants could not otherwise have obtained them, as above stated, the question then arises what direct effect did such failure have upon the defendants' interests. It is claimed the mill was thereby caused to be suspended, and teams and laborers kept in idleness, for two months. The first inquiry is, to what extent was the plaintiff's failure the cause of the stoppage? The defendants' evidence shows that the mill would saw from 10,000 to 15,000 feet per day, the estimated number of feet in plaintiff's logs was from 200,000 to 300,000. They admit they received and sawed 116,000 feet of plaintiff's logs. Taking the means of the estimates, plaintiff's logs contained 250,000 feet, 116,000 deducted leaves

134,000. At 12,500 feet, per day, this balance would have run the mill about ten days. If the laborers and mules could not have been otherwise profitably employed during that short time, and if under the circumstances defendants reasonably expected early delivery of the residue of the logs, they might reasonably have kept the mules and laborers so long, unemployed, at the cost of the plaintiff, provided they show they lost so much by the stoppage; but if the situation practically pointed out that the delivery of the logs was not to be expected, the defendants had no right to hold the mules and laborers in idleness to await such delivery. We presume the mill had no rental value for so short a period. Interest on its value for ten days would not be an objectionable measure of redress, under such circumstances, for the loss of its use.

It is contended the defendants had existing contracts for the sale of lumber at a profit, which they were rendered unable to fill by the plaintiff's default. We laid down rules governing this subject in *Raisin Fertilizer Co. v. Barrow*, 97 Ala. 694, to which we refer.

What defendants' general profits for running the mill for so short a time would amount to, would be mere speculation. If, in any case, they can safely and justly be allowed, they cannot in this. We cite on the general subject, the following valuable authorities: *Masterton v. Mayor, &c.,* 42 Am. Dec. 38; *Griffin v. Colver,* 69 Am. Dec. 718; *McKinnon v. McEwan,* 42 Am. Rep. 458; *Barker v. Mann,* 96 Am. Dec. 373; *Trigg v. Clay,* 29 Am. St. Rep. 723; *Wright v. Bank of Metropolis,* 6 Am. St. Rep. 356; *Hutchinson Mfg. Co. v. Pinch,* 30 Am. St. Rep. 463; *Brownell v. Chapman,* 35 Am. St. Rep. 326; *Sitton v. Macdonald,* 60 Am. Rep. 484. The most of these cases have extended notes discussing the subject. See also cases very like the present: *Ferssler v. Love,* 48 Pa. St. 410; *Leonard v. Beaudry,* 68 Mich. 312.

It is evident the cause was disposed of, and defendants' damages, by way of recoupment, assessed by the trial court upon principles not in harmony with our views. Guided by what we conceive to be the true principles involved, the defendants, if their pleas were sustained, could not, under the evidence in this record, be properly accorded so large an allowance as was assessed by the trial court. That the cause may be tried and the evidence

adduced with reference to our views, we remand it, instead of deciding it here.

It will be seen from our construction of the contract, that the sixth plea states no cause of action against the plaintiff, but the grounds of demurrer assigned to it did not properly test its sufficiency. We refer to it that it may be properly treated on another trial.

There was no evidence of a contract such as is set out in the fifth plea.

Reversed and remanded.