John C. Yorston vs. Huntington Brown.

Suffolk. November 14, 1900. — March 1, 1901.

Present: Holmes, C. J., Knowlton, Barker, Hammond, & Loring, JJ.

In a suit to recover the contract price for a portrait engraving of the defendant made by the plaintiff, it appeared that the defendant signed the following order on a blank furnished by the plaintiff headed by a description of a proposed edition of Gould's History of Freemasonry : " Please to execute for me a steel plate engraving from photograph furnished of myself, for which I agree to pay to you or your order the sum of $300 upon the delivery to me of fifteen India-proof impressions from the plate ; and I authorize you to copyright, print and insert the number of impressions required in the Portrait Gallery and Biographical Volume of the above named work." An advertisement .of the plaintiff was put in evidence in which the defendant was named as one of " the brethren whose portraits have already been engraved or are being engraved to appear in Gould's History of Freemasonry." There was evidence that the plaintiff published a portrait engraving of the defendant in a book called " Portrait Gallery with Biographical Sketches of Prominent Freemasons throughout the United States " making no reference to Gould's History of Freemasonry. *Held*, that the heading of the blank on which the order was signed was part of the instrument and could be used to show that the defendant gave his order to the plaintiff as publisher of Gould's History of Freemasonry ; that the contract being ambiguous the above named advertisement was admissible as an act of the plaintiff tending to show its meaning ; that the plaintiff's agreement was to publish the defendant's portrait in Gould's History of Freemasonry ; and that in order to recover the contract price the plaintiff must show that the defendant accepted the publication of his portrait in the book published by the plaintiff in place of a publication in Gould's History of Freemasonry.

Contract to recover $300 and interest thereon for a steel plate portrait engraving of the defendant made by the plaintiff, doing business under the name of John C. Yorston & Co. Writ dated August 26, 1895.

The declaration was on an account annexed to the writ as follows : " Philadelphia, Pa., Feb. 15, 1889. Huntington Brown, Mansfield, Ohio. Bought of John C. Yorston & Co. Dr.

" To Engraving Portrait of yourself to appear in The Portrait Gallery of Prominent Freemasons together with 15 India Proof Impressions of the Portrait. The plate to be delivered to you after we have printed all the Impressions required as above and according to contract, $300. To interest at 6 % from Feb. 15, 1889, to Aug. 15, 1895, $117. Total, $417."

At the trial in the Superior Court, before *Richardson*, J., the following facts appeared :

On April 25, 1889, the defendant signed the following blank furnished by the plaintiff: " The American Library Edition. Much Enlarged and Improved by American Masonic Authorities. The History of Freemasonry. Its Antiquities, Symbols, Constitutions, Customs, etc., derived from Official Records, throughout the world, by Robert Freke Gould, Past Senior Grand Deacon of England, Josiah H. Drummond, Enoch T. Carson, T. S. Parvin, and others. Superbly Illustrated. With Portraits of American and European Masonic Celebrities, Engravings of Masonic Marks, Medals, Fac-similes, Architecture, Curiosities, Events, etc.

" Mansfield, Ohio, April 25, 1889. To J. C. Yorston & Co., Publishers, New York, Cincinnati and Chicago. Gentlemen : Please to execute for me a Steel Plate Engraving from photograph furnished of myself, for which I agree to pay to you or your order the sum of Three Hundred Dollars, upon the delivery to me of Fifteen India-Proof impressions from the plate; and I authorize you to copyright, print and insert the number of impressions required in the Portrait Gallery and Biographical Volume of the above-named work, after which the plate is to be delivered to me. I also hereby acknowledge the receipt of a duplicate copy of these conditions and order. No other agreement, written or verbal, will · be recognized by Publishers, Subscriber or Agent, unless endorsed on this order. Name, Huntington Brown ; Business, Miller ; Address, Mansfield, Ohio.

" The above Impressions are to be delivered by Express ' C. O. D. or otherwise."

At the trial it was agreed that, in pursuance of this contract, the plaintiff executed for the defendant a steel plate engraving from a photograph of the defendant furnished by the defendant, and delivered to the defendant fifteen India-proof impressions from the plate. The plate was never delivered to the defendant, and the plaintiff contended that he held the plate because he was not through using it for the purpose of new editions of the work in which the plaintiff's portrait was published.

The portrait and biography of the defendant were not published in Gould's History of Freemasonry, which was a work

complete in four volumes. The plaintiff testified that they
were published in a volume which the plaintiff contended was
the Portrait Gallery and Biographical Volume of that work, but
in the title of this book there was no reference to Gould's His-
tory of Freemasonry.

It appeared that the following advertisement was published as
a leaflet by the plaintiff: " List of Brethren whose Portraits
have already been engraved or are being engraved to appear in
Gould's History of Freemasonry and Biographical Cyclopedia
and Portrait Gallery of prominent Freemasons of the United
States." Then followed a list of one hundred and two names,
including that of the defendant.

The defendant testified: " I did receive Vol. IV. of Gould's
History of Freemasonry, and there was no publication in their
volume of my biography, nor was there any portrait, of any
nature, of myself."

An agent of the plaintiff testified: " Mr. Brown often said to
me that his portrait did not appear in the work for which it was
intended ; that his distinct understanding was that it was to ap-
pear in one of the volumes of Gould's History of Freemasonry.
In reference to this, I desire to· say that the original intention
of Mr. Yorston was to publish a volume to be entitled Portrait
Gallery and Biographical Volume of Gould's. History of Free-
masonry, to be uniform in size and binding with the aforesaid
history, and to be complete in one volume: at my instance,
however, the title of the work was changed, eliminating there-
from all reference to Gould's History of Freemasonry, so that
the title would appear Portrait Gallery with Biographical
Sketches of Prominent Freemasons thoughout the United
States, John C. Yorston & Company, Publishers."

At the conclusion of the evidence, the defendant requested
six rulings, of which the sixth was as follows: " That if the
contract stipulated that a biography of the defendant should be
published in Gould's History of Freemasonry, it was not per-
formed by a publication of the defendant's biography in some
other book or volume, even though the same was similar in pur-
pose and circulation."

The judge, among other instructions to the jury, said :

" I think his [the defendant's] sixth request, that if the con-

tract stipulated that a biography of the defendant should be published in Gould's History of Freemasonry, it was not performed by a publication of the defendant's biography in some other book or volume, even though with the same or similar in purpose and circulation; I think that is correct and that would be so, but the question is, whether the contract stipulates that. I have already stated that it seems to me the contract precedes that direction, and that the plaintiff would be entitled to recover, upon the execution of the steel plate engraving photograph of himself, and the delivery to him of fifteen India-proof impressions from the plate. He says, you notice, 'I agree to pay you or your order the sum of three hundred dollars upon the delivery to me of fifteen India-proof impressions from the plate.' He does not say upon the delivery to me of those impressions *and* the delivery of the plate to me or the publication of those impressions in a book; he goes on and makes those directions afterwards. . . .

"In addition to that, I want you to answer this question, as it may have some bearing upon the whole case: 'Did the defendant with knowledge of all the facts, and especially the fact that the biography had not been published in that particular book, promise to pay the bill of $300 or to send a check for it?' . . . I should like to have you, in addition to your verdict, answer that question yes or no."

The jury returned a verdict for the plaintiff and to the question asked them answered "yes;" and the defendant alleged exceptions.

*J. A. Brackett*, for the defendant.

*W. P. Foster*, for the plaintiff.

LORING, J.  The order for the steel plate engraving, for which the defendant was to pay $300, was not given to an engraver but to a publisher; it was addressed to "J. C. Yorston & Co. Publishers"; it is competent for the defendant to refer to the plaintiff's own printed heading on the blank furnished by him to the defendant for use in making out the order, to show that the order was given to him as publisher of Gould's History of Freemasonry.

This case is not like *Schenck* v. *Saunders*, 13 Gray, 37, which was followed by the Supreme Court of the United States in

*Sturm* v. *Boker*, 150 U. S. 312, relied on by the plaintiff; in those cases one of the parties sought to add to the terms of a contract which was clearly set forth in writing, by a statement in his own bill head, under which he had made out an invoice of the goods covered by the contract; in this case the defendant seeks to take advantage of the heading on the plaintiff's printed blank order, to show that the order was given to the plaintiff as publisher of Gould's History of Freemasonry.

The advertisement of the plaintiff, in which the defendant is named as one of the "brethren whose portraits have already been engraved or are being engraved to appear in Gould's History of Freemasonry," was an act of the plaintiff which can be considered in construing this ambiguously written document. *Menage* v. *Rosenthal*, 175 Mass. 358.

Taking these matters into consideration, we are of opinion that by the true construction of the written order, the steel plate engraving, for which the defendant was to pay $300, was to be made for the publication of the likeness of the defendant in Gould's History of Freemasonry.

Were it not for the contention of the plaintiff to the contrary, it would be unnecessary to add that the plaintiff, on abandoning the publication of the defendant's likeness in Gould's History of Freemasonry, ended his right to recover the contract price. Cases like *Couch* v. *Ingersoll*, 2 Pick. 292, and the first rule in the notes to *Pordage* v. *Cole*, 1 Wms. Saund. 548, 550, have no application to a case where the plaintiff has abandoned all intention of performing his part of the contract.

The plaintiff is not entitled to have a verdict entered for him by reason of the affirmative answer given by the jury to the question put to them. It would have been competent for the plaintiff to prove that the defendant accepted a publication of his likeness in the book, published by the plaintiff, from which all reference to Gould's History of Freemasonry was eliminated, in place of a publication of it in that book. But if he wished to recover on that ground, he had to convince the jury that the defendant, knowing that under the contract he had a right to have his likeness published in Gould's History accepted in place of it, a publication in the Portrait Gallery, from which all reference to Gould's History was eliminated. No such question was

left to the jury in this case; on the contrary, they were told that the plaintiff was entitled to recover the contract price on executing the steel engraving and delivering to the defendant fifteen India-proof impressions from it, without a publication or an intended publication of the defendant's likeness in Gould's History of Freemasonry. After giving them that instruction the presiding justice asked the jury to answer the following question: " Did the defendant, with knowledge of all the facts, and especially the fact that the biography had not been published in that particular book, promise to pay the bill of $300 or to send a check for it?" Though the jury under these instructions answered that question in the affirmative, they have not found that the defendant with knowledge of his rights under the written order accepted a publication in the Portrait Gallery in place of a publication in Gould's History of Freemasonry, and that answer gives the plaintiff no right to recover the contract price.

*Exceptions sustained.*