[No. 8492.  Department One.  May 2, 1910.]

# R. J. MENZ LUMBER COMPANY, *Appellant*, v. E. J. McNEELEY & COMPANY, *Respondent*.[1]

SALES—DELIVERY—"F. O. B."    An accepted order for shingles "f. o. b. cars" means that the seller shall do all that is necessary to load the cars, including the securing of the cars, especially in view of the universal usage in this state.

CONTRACTS—WRITING—CONSTRUCTION—PROVINCE OF COURT.  Where an order and acceptance is in writing and not ambiguous, it is for the court to construe it, and it is error to instruct the jury that they are to determine what the contract was.

CONTRACTS—CONSTRUCTION—PRINTED HEADINGS.    Printed matter on letter heads not referred to either in an order for the sale of goods or in the acceptance is not a part of the contract.

CUSTOM AND USAGE—EVIDENCE—TO VARY WRITING—SALES.  Parol evidence of a general or special custom in the shingle trade that accepted orders were contingent upon the exigencies of transportation and expired where delivery was unavoidably delayed for a reasonable time, is inadmissible to vary or control the terms of an unconditional written acceptance, as the same would be repugnant to the contract.

SALES—ACTION FOR BREACH—DEFENSES—FAILURE TO DELIVER—EXCUSES.  In an action to recover for breach of a contract to deliver shingles, no specific date for delivery having been agreed upon, the defense that washouts, mountain snows and slides prevented a delivery within a reasonable time is unavailable, where the plaintiff was not complaining of a failure to deliver while such conditions existed.

SAME—DAMAGES—ASSESSMENT.    Upon breach of a contract to deliver carload lots, the size of the car not being specified, damages are assessable on the basis of an average sized car.

SAME—BREACH—MEASURE OF DAMAGES.    The measure of the buyer's damages for breach of a contract for the sale of shingles, no definite time for delivery being fixed, is the difference between the contract price and the value of the shingles at the date of the demand and refusal to perform the contract.

CHADWICK, J., dissents.

Appeal from a judgment of the superior court for Pierce county, Chapman, J., entered March 27, 1909, upon the verdict of a jury rendered in favor of the defendant, in an action on contract.  Reversed.

[1]Reported in 108 Pac. 621.

*Shank & Smith*, for appellant.

*F. A. Huffer*, for respondent.

Gose, J.—The appellant, the plaintiff below, commenced this action against the respondent to recover damages for failure to deliver four carloads of shingles and mixed lumber and shingles. The case was tried to a jury, which returned a verdict for the respondent. From a judgment of dismissal entered upon the verdict, the plaintiff has appealed.

The complaint states four causes of action based upon four separate orders. In the third cause of action, which is illustrative of the others except as hereafter noted, it is alleged, in substance, that the appellant and the respondent entered into a contract of purchase and sale as evidenced by an order and the reply thereto, which, omitting immaterial parts, is as follows:

"Seattle, Wash., Jan. 17, 1907.

"E. J. McNeeley & Co., Tacoma, Wash.

"Order No. 729X

(For conditions upon which this order is accepted see other side of this sheet.)

"Cars to be consigned from R. J. Menz Lumber Co.

(Always show us as Shippers.)

|            | Ship to R. J. Menz Lumber Co. at |
|------------|----------------------------------|
| Bill of    | Minnesota Trft., Minn. |
| lading to  | Route N. P. |
| read       | Prices F. O. B. Mill. |

"Terms 90 per cent. advance. Settlement on receipt of consignee's Report and Expense Bill (less usual 2 per cent. discount.) All underweights to mill 50 cent rate. Price Guaranteed.

"Quantity: One (1) Car.

| Description. | Price per M. | Guaranteed Weight per M. |
|---|---|---|
| 6-2 Plain Dimension R. C. Shingles at Any sized—large preferred | $2.50 | 160 |

"Please acknowledge acceptance of this order on enclosed postal card, by return mail.   Very truly yours,

"R. J. Menz Lumber Co.

"Per E. B. Day."

"Tacoma, Wash., Jan. 18, 1907.

"R. J. Menz Lumber Co., Seattle, Wash.

"Dear Sirs: Your order No. 729X has been received.   We accept and enter same for shipment in accordance with the terms thereon.   We anticipate making shipment on or about . . . . . . . . . . . . . .   At prices annexed, we would like to move the following stock:. . . . . . . . . . . . . . . . . .

"Yours very truly,

"E. J. McNeeley & Company,

"Per . . . . . . . . . . . . . . . . ."

The order in the first cause of action is for fifty thousand described shingles, with directions to "Fill car 6-2 Ex. *A. *R. C. Shingles."   The order in the second cause of action is for seventy-five thousand designated shingles, with directions: "Balance 6-2 extra. *A. *R. C. Shgls."   And "Small car preferred."   Shipping directions in the fourth cause of action were: "Ship to order of Bonds Foster Lumber Company at Aurora, Nebraska.   How ship: Billings care B. & M. R.   When: Soon as possible.   Terms: Regular f. o. b., Aurora, Nebraska.   Sixty cent rate."   This cause of action was assigned to the appellant.   Each of the acceptances, except on the third cause of action, was upon the respondent's stationery which had printed thereon, above the typewritten acceptance, the name of the respondent, illustration of shingles, capacity of its mills, specialties, etc., including the words: "Quotation subject to change without notice.   Contracts made at home office only and contingent upon exigencies of transportation and accidents beyond our control."   Similar typewritten matter was upon the letter heads of the appellant.

The respondent interposed three affirmative defenses to each cause of action except the third, which in substance are,

(1) that it accepted the order by letter upon its letter head which contained the printed matter just quoted; that at the time of the acceptance of the order and continuing until April 5, 1907, there was a great shortage of railroad cars in the state of Washington and in the country generally for use in transporting lumber and shingles, and that cars could not be procured for such purposes except in limited numbers inadequate for the handling of the lumber and shingle business of the state and of the country generally; that by reason thereof manufacturers and sellers of such commodities were unable to procure cars, which facts were at all times known to the appellant; that between January 26 and April 5, 1907, by reason of storms, washouts, and other acts of God preventing railway companies operating in this and other lumber producing states, railroads could not furnish any cars for transporting lumber and shingles; that the car embargo could not have been foreseen; that on account thereof the market price of lumber and shingles appreciated; (2) that there was a general custom, and a special one between the appellant and the respondent, that such contracts were contingent upon the exigencies of transportation and accidents beyond the control of the parties; that when delivery of such commodities has been delayed until a reasonable time has expired in which to make delivery, without fault on the part of the seller, and where delivery would inflict a loss upon either of the parties, compliance with the contract is excused; that this custom was well known to the parties and the contract was made with reference thereto (the car embargo and the rise in the price of lumber and shingles is alleged as in the first defense); (3) that there is a particular custom in the lumber trade known to the appellant, and in giving or accepting an order, the parties contracted in reference thereto; that all orders in writing are accepted contingent upon the exigencies of transportation and accidents beyond the control of the parties. The shortage of cars and the rise in the price of lumber is alleged as in the

first defense.  The first affirmative defense is omitted as to the third cause of action, the acceptance there being on a postcard not containing the printed matter on the respondent's letter head.  The failure of respondent to deliver the material is admitted, and it seeks to excuse performance in the manner pleaded.

It now asserts, however, that it was the duty of the purchaser to furnish the cars for loading, and that failing to do so there can be no recovery.  Notwithstanding the fact that this view is inconsistent with the claim that the acceptance of the order was subject to the exigencies of transportation, we will consider it, as it may arise upon a retrial of the cause.  Where the contract is otherwise silent as to who shall furnish the cars, the term "f. o. b. cars," as applied to ordinary commercial commodities, means that the goods shall be free on board the cars—that is, loaded without expense to the purchaser, and that the seller shall procure and load them.  *Hurst v. Altamont Mfg. Co.*, 73 Kan. 422, 85 Pac. 551, 117 Am. St. 525, 6 L. R. A. (N. S.) 928; *Vogt v. Schienebeck*, 122 Wis. 491, 100 N. W. 820, 106 Am. St. 989, 67 L. R. A. 756; *John O'Brien Lumber Co. v. Wilkinson*, 117 Wis. 468, 94 N. W. 337; *Elliott v. Howison*, 146 Ala. 568, 40 South. 1018.

In the *Hurst* case, at page 429, it is said:

"It is our understanding that the phrase or formula 'f. o. b. cars' has by long usage and custom acquired throughout the business circles of this country a definite and specific meaning, generally understood by all business people. When such phrase or formula is used in a business contract, between a buyer and seller of ordinary commercial commodities, where the use of a common carrier is necessary, the parties intend thereby that the seller will, at his own expense, do all that may be necessary to accomplish the loading and consignment of the goods to the buyer, including the placing of cars upon which to load the commodities sold; and when nothing appears to modify or limit this meaning the courts should enforce the contract so as to effectuate this intent.  This rule is reasonable; it harmonizes with existing

business conditions, and is the universal practice among business people. It is conceded that by this phrase the seller is bound to deliver the goods to the buyer by placing them on board the cars. How can he do this unless he secures the cars? Why say that this duty belongs to the buyer? The language of the contract is silent upon this question. By the letter of the agreement it may be said that neither party has agreed to perform this duty, but it may not be said that there was no understanding upon this subject. Without such an understanding the contract would be incomplete and unenforceable. What the parties intended upon this subject can only be ascertained by interpretation, and to do this the situation of the parties when the contract was made, the subject-matter thereof, and all the attendant circumstances and conditions, must be considered."

In the *Vogt* case, discussing the meaning of the phrase at page 499, the court said:

"Whether such meaning includes, under the circumstances of this case, the duty of the seller to procure the cars in place for his use in loading the merchandise, and evidence is not permissible to show the existence of a custom which the parties contract with reference thereto, is not altogether plain, but we are constrained to hold that it does."

In the *Elliott* case, at page 591, it is said:

"In the case at bar the seller undertook to accomplish the delivery of the things sold free on board the cars. We think it comports with reason to hold that by necessary implication he agreed to supply all means to accomplish such result—the cars upon which the shipments of piles were to be made."

The authorities cited by the respondent, holding that the term implies that the buyer shall procure the cars, are discussed, distinguished, and disapproved in the case of *Hurst v. Altamont Mfg. Co., supra.* It must, however, be conceded that there is a conflict of authority on this question, but we think, not only that the rule we have stated is a correct interpretation of the phrase, but that universal usage in this state has given it the meaning which the language imports. The language, however, in this case, "We accept and enter

same for shipment. . . . We anticipate making shipment," cannot be given any other rational meaning.

The court instructed the jury, in substance, that they should determine from all the evidence what the contract was; that in so doing is was proper for them to consider whether the printed matter on the letter heads forms a part of the contract; that ordinarily such matter, if not repugnant to the contents of the letter itself, may be considered as a part of the contract if the parties make their contract with reference thereto and knowledge thereof. This instruction was erroneous. The order and the acceptance were in writing and constituted the contract, and it was the duty of the court to construe them, if not ambiguous; and if ambiguous, to receive parol testimony to explain the ambiguities. The printed matter on the letter heads was not referred to in either the order or the acceptance, and is not a part of the contract. 2 Page, Contracts, § 600; *Sturm v. Boker*, 150 U. S. 312; *Summers v. Hibbard, Spencer, Bartlett & Co.*, 153 Ill. 102, 38 N. E. 899, 46 Am. St. 872. In the *Sturm* case the court said that a printed bill head could not control, modify, or alter the terms of the contract, and that "the contract being clearly expressed in writing, the printed bill-head of the invoice can, upon no well-settled rule, control, modify, or alter it." In the *Summers* case, at pages 108, 109, the court, in considering the precise question, said:

"The mere fact that appellants wrote their acceptance on a blank form for letters, at the top of which were printed the words, 'All sales subject to strikes and accidents,' no more made those words a part of the contract than they made the words there printed, 'Summers Bros. & Co., Manufacturers of Box-annealed Common and Refined Sheet-Iron,' a part of the contract. The offer was absolute. The written acceptance, which they themselves wrote was just as absolute. The printed words were not in the body of the letter or referred to therein. The fact that they were printed at the head of their letter-heads would not have the effect of preventing appellants from entering into an unconditional contract of sale."

The construction contended for by the respondent would make that which is an absolute, unqualified acceptance upon its face, a conditional one by reference to a letter head which was not referred to by either parties. The language of the acceptance, "We accept and enter same for shipment in accordance with the terms thereof," is clear and its meaning plain. The respondent agreed to ship the goods according to the terms of the order, not according to the terms of the printing on the letter heads. The respondent has cited *Yorston v. Brown*, 178 Mass. 103, 59 N. E. 654, and *Delta & Pine Land Co. v. Wallace*, 83 Miss. 656, 36 South. 263. In the *Yorston* case the order on which the plaintiff relied for a recovery specially referred to the printed head lines on the order, and the contract was made by reference thereto. The court ruled that it was competent for the defendant to refer thereto on the blank furnished him by the plaintiff for his use in making the order. In the *Delta* case it was held that written and printed matter in a contract will be reconciled when it can be done.

The court instructed the jury that, in determining whether there had been a breach of the contract, they should consider whether there was a general custom which formed a part of the contract; whether it was the custom of the respondent to accept such orders only upon the conditions expressed in its letter heads, which was brought to the knowledge of the appellant so that it made the contract in view of the provision and adopted it as a part of the contract; that they should determine when the contract expired, whether in a reasonable time if the parties were unable to fill it so that it was cancelled and no longer obligatory, and if so, there could be no recovery. This instruction the appellant contends was erroneous. We think it was clearly so. Parol testimony of usage or custom, either general in the community or special between the people engaged in a particular trade or business, is not admissible to vary, modify, or control the terms of the contract. *Williams v. Ninemire*, 23 Wash.

393, 63 Pac. 534; *Vollrath v. Crowe*, 9 Wash. 374, 37 Pac. 474; *Miller v. Bean*, 13 Wash. 516, 43 Pac. 636; *Commercial Bank of Tacoma v. Hart*, 10 Wash. 303, 38 Pac. 1114; *City of Covington v. Kanawha Coal & Coke Co.*, 121 Ky. 681, 89 S. W. 1126, 123 Am. St. 219, 3 L. R. A. (N. S.) 243; *Sheffield Furnace Co. v. Hull Coal & Coke Co.*, 101 Ala. 446, 14 South. 672; *Partridge v. Phoenix Mut. Life Ins. Co.*, 15 Wall. 573; *Barnard v. Kellogg*, 10 Wall. 383; *Mercantile Banking Co. v. Landa* (Tex. Civ. App.) 33 S. W. 681; *Scott v. Hartley*, 126 Ind. 239, 25 N. E. 826; *McMillan v. American Express Co.*, 123 Iowa 236, 98 N. W. 629; *Bigelow v. Legg*, 102 N. Y. 652, 6 N. E. 107.

In the *Covington* case, at page 686, it is said:

"But in all cases of this sort the rule for admitting the evidence of usage or custom must be taken with this qualification; that the evidence be not repugnant to, or inconsistent with, the contract; for otherwise it would not go to interpret and explain, but to contradict, that which is written."

In the *Sheffield Furnace Co.* case the contract provided for a sale of coke at a price "f. o. b. cars, Sheffield, Alabama." Sheffield was the point of destination of the coke. The court held that evidence of a general custom in the coke trade was inadmissible for the purpose of showing that the purchaser should advance the freight. In *Barnard v. Kellogg* it was held that usage cannot be allowed to subvert the settled rules of law or defeat the essential terms of the contract; that its office is to explain words or phrases of doubtful meaning, or which may be understood in different senses according to the subject-matter to which they are applicable. In the *Partridge* case the plaintiff, having been discharged from the employment of the defendant, sought to recover for services rendered as agent, and asserted a right to a commission on the annual premiums paid, or to be paid, on policies issued through his agency. To establish this he undertook to prove a usage between insurance companies and their agents. He introduced in evidence a letter of the

company in reply to one asking information as to the relation he sustained to the company, which stated: "Concerning your status in Missouri, it is simply this: You are working up a business for yourself, and are paid the highest commissions which we pay." At page 579, the court, speaking through Mr. Justice Miller, said:

"It appears to us, as it did to the circuit court, that the testimony offered would have established a new and distinct term to the contract. It would have established a contract very different from the written one introduced by plaintiff. The language of the letter was neither ambiguous nor technical. It required and needed no expert, no usage to discover its meaning. To have admitted the usage offered in evidence in this case would have been to make a contract for the parties differing materially from the written one under which they had both acted for some time."

And that:

"No such extension of the doctrine is consistent either with authority or with the principles which govern the law of contracts."

The respondent has cited, in support of this construction, *Bliven v. New England Screw Co.*, 23 How. 420; *Robinson v. United States*, 13 Wall. 363, and *Lillard v. Kentucky Distilleries & Warehouse Co.*, 134 Fed. 168. These cases recognize the rule which we have stated, but hold that it is inapplicable to the particular facts before the court. The *Bliven* case, in its application of this principle of law to the facts before it, tends to support the instruction. But as we read the *Robinson* and the *Lillard* cases, the facts are so different that they are not pertinent to the issue. In the *Robinson* case a contractor had agreed to deliver a million bushels of barley to the government between certain dates, but the contract did not specify the manner of delivery. After making certain deliveries in the sack, a large quantity was tendered loose in wagons. The tender being refused, it was held in a suit by the government that, the contract being silent as to the mode of delivery and there being two modes

essentially different, evidence of the customary mode of delivery was admissible. In the *Lillard* case it was held that, where a distiller had contracted to deliver the total product of slop at a "feeding lot" supplied by him, the contract not expressing the mode of delivery, evidence of custom was admissible to show how a delivery was to be made. In the case at bar it seems to us that the instruction of the court permitted the jury to find a contract wholly different from that made by the parties. The acceptance of the order was unconditional. The time of delivery not being stated, the law would require a delivery within a reasonable time. The instruction permitted the jury to transform an unconditional acceptance into a conditional one, which made the delivery subject to the exigencies of transportation and subject to the further condition that, if the goods could not be shipped within a reasonable time, the contract was no longer obligatory upon either party. This was clearly repugnant to the contract.

A contract definite in its terms cannot be made subject to a custom of trade that, if it cannot be performed in a reasonable time, it need not be performed at all. There is a principle of law that, in contracts where the performance depends on the continued existence of a specified person, animal, or thing, a condition is implied that the impossibility of performance arising from the death of the person or animal or the destruction of the thing, excuses the performance. This principle has no application to this case. The acceptance required a delivery within a reasonable time. In determining what was a reasonable time, the circumstances of the difficulty or impossibility of getting cars up to April 2, 1907, the date when the car embargo was removed, should be considered. One of the defenses is that there was a great shortage of cars when the contract was made, and that the appellant had knowledge of that fact. If this is true, it would be a circumstance in determining what a reasonable time would be. The fact that the contract called for ship-

ment through the mountains in the winter season would be another circumstance to be considered. We are not dealing with a contract where a fixed date of shipment or delivery was agreed upon. The appellant, however, is not complaining because a delivery was not made during this period, but because of the refusal of the respondent to deliver within a reasonable time after transportation of lumber and shingles was resumed. The question of whether the washouts, deep mountain snows, and slides, preventing transportation for a given period, were the acts of God need not be considered because, as we have stated, the appellant is not complaining on account of a failure to deliver while these conditions obtained. 2 Page, Contracts, §§ 1375, 1377; *Buffalo & L. Land Co. v. Bellevue Land & Imp. Co.*, 165 N. Y. 247, 59 N. E. 5, 51 L. R. A. 951; 9 Cyc. 627; *Summers v. Hibbard etc. Co., supra; Jones v. Anderson*, 82 Ala. 302, 2 South. 911; *Fleishman v. Meyer*, 46 Ore. 267, 80 Pac. 209; *Eugster & Co. v. West & Co.*, 35 La. Ann. 119, 48 Am. Rep. 232.

The respondent contends that, if it could not ship within a reasonable time owing to lack of cars, it was excused from shipping at all, and cites: *Stewart v. Stone*, 127 N. Y. 500, 28 N. E. 595, 14 L. R. A. 215, 220, and *Raisin Fertilizer Co. v. Barrow*, 97 Ala. 694, 12 South. 388. In the *Stewart* case a manufacturer of butter and cheese agreed with certain individuals to convert their milk into cheese and butter, sell the products, and divide the proceeds according to the contract. The factory was destroyed by fire and a quantity of milk, butter and cheese was lost. The court recognized the exception that we have noticed, and held that the destruction of the factory, if it occurred without negligence on the part of the owner, relieved it of liability for damages. In the *Raisin Fertilizer Co.* case the engagement to deliver was conditional upon "water transportation" permitting.

Where the order does not specify the size of the car, the damages are assessable on the basis of an average sized car used in shipping such commodities. *Floyd v. Mann*, 146

Mich. 356, 109 N. W. 679; *Bullock v. Finley,* 28 Fed. 514. Under the circumstances of the case, the measure of damages is the difference between the contract price and the value of the commodities at the date of the demand and refusal to perform the contract. *Summers v. Hibbard etc. Co., supra; Roberts v. Benjamin,* 124 U. S. 64; *Brown v. Sharkey,* 93 Iowa 157, 61 N. W. 364; *Trask v. Hamburger,* 70 N. H. 453, 48 Atl. 1087; *United R. & Elec. Co. v. Wehr & Co.,* 103 Md. 323, 63 Atl. 475.

The instructions requested by the appellant state the law of the case applicable to the issue, and should have been given as an entirety. The length of this opinion forbids a statement of their substance, but it is sufficient to say that they were in harmony with the view we have taken of the case.

The judgment will be reversed, with directions to proceed in conformity with this opinion.

RUDKIN, C. J., FULLERTON, and MORRIS, JJ., concur.

CHADWICK, J., dissents.