VOGT, Appellant, vs. SCHIENEBECK, Respondent.

*September 8—September 27, 1904.*

*Contracts: Construction: "F. o. b. cars": Parol evidence to vary writing: Sales: Executory contract: Breach: Measure of damages.*

1. One who undertakes to accomplish a certain result, by implication agrees to supply all the means necessary thereto.
2. Courts take judicial notice that, where one agrees to sell to another property "f. o. b. cars" at the place of shipment, such term means that the seller will, without expense or act of the buyer, deliver to the latter the subject of the sale on cars at such place.
3. The term "f. o. b. cars" in mercantile contracts means free on board cars, and so plainly as not to admit of explanation or change by reference to extrinsic evidence or circumstances. It *prima facie* means, also, when used as regards the seller, that he will procure the cars for use in executing the contract, and such ordinary meaning cannot be changed without clear and satisfactory evidence of a custom to the contrary, known to both parties to the transaction at the making of the contract.
4. When a contract has been reduced to writing, evidence of what occurred between the parties in respect thereto at the time thereof or prior thereto is inadmissible.
5. The rule that where a written contract is made as a mere part execution of an entire verbal contract, that portion not embodied in the paper may be shown by parol, applies only where such portion is in itself a distinct complete contract, not to mere stipulations in regard to and varying the terms of the written contract.

6. In an action to recover damages for the breach of an executory contract to sell and deliver goods, the general rule is that the difference between the market value thereof at the time and place for delivery, and the contract price, with interest from the time of the breach, is the true measure.

7. The basis of such rule is that the buyer at the time of the breach presumably could have supplied himself with the goods at the time and place agreed upon for the delivery; and where such is not the case the rule does not apply, but the matter is governed by the broad principle that recoverable damages in such circumstances are "such as may fairly and reasonably be considered as either arising naturally, i. e., according to the usual course of things, from such breach of contract itself, or such as may reasonably be supposed to have been in contemplation of both parties, at the time they made the contract, as the probable result of the breach of it."

8. When the general rule of damages does not apply as above stated, and there was a market value for such property at the time agreed upon for the delivery, at the point to which the property was to be consigned, the difference between the contract price and such value, less any expense which the buyer, if the contract had been performed, would have been put to in delivering the goods at such place, with interest on the residue at the legal rate, from the date of the breach, is the proper measure of damages.

[Syllabus by MARSHALL, J.]

APPEAL from a judgment of the circuit court for Ashland county: JOHN K. PARISH, Circuit Judge. *Reversed.*

Action to recover damages for breach of contract for the sale of lumber. The complaint was to the effect that defendant contracted to sell plaintiff 100,000 feet of one-inch pine lumber then owned by the former and piled at Stadler's mill, near the village of Butternut, Wisconsin, at $8 per thousand feet for the culls, and $15 per thousand feet for common or better, delivery to be made to the plaintiff free on board cars at Butternut upon demand by him within two months from November 15, 1902, and the customary inspection fees to be paid one half by each party; that defendant breached such contract by refusing to deliver the lumber when the same was duly demanded, or at all, to the plaintiff's damage in the sum of $1,500.

The defendant, for answer to the complaint, denied all the allegations thereof, and alleged the making of a contract substantially as stated in the complaint, except that it was agreed, as part of such contract, that the cars for use in delivering the lumber to the plaintiff were to be furnished by him, the lumber to be delivered only upon his demand within two months after November 15, 1902; that he would furnish the inspector to examine, grade, and measure the lumber, the expenses to be paid equally by the parties; and that plaintiff did not within the time specified, or before the commencement of the action, demand the lumber or furnish cars for use in delivering the same, or furnish or offer to furnish the inspector; that on the contrary he at all times neglected to make any demand for the lumber, and refused to accept the same.

The evidence showed that the contract was in writing and as follows:

"Received of *Paul Vogt* of Milwaukee, Wis., Five (5) Dollars on account of sale to him by me, made this 15th day of November, 1902, of 100,000 feet more or less of pine one-inch lumber at Eight Dollars per 1,000 feet cull & Fifteen Dollars per 1,000 feet common or better now at Stadler's Mill, f. o. b. cars Butternut, Wis., to be delivered upon demand within two months from above date. Inspection fees paid by both of us.

"Dated at Butternut, Wis., Novbr. 15th, 1902.
                                        "JOSEF SCHIENEBECK."

Evidence was allowed, against objections by plaintiff's counsel, in effect that at the time such contract was made plaintiff verbally agreed to furnish the cars for use in delivering the lumber; also as to what the custom was between buyer and seller in regard to such matters. The court instructed the jury, in substance, that the burden of proof was on plaintiff to establish by a fair preponderance of the evidence that defendant agreed to furnish the cars, and unless the jury were satisfied that he did so agree, defendant was entitled to recover; otherwise plaintiff was so entitled, and to the ex-

tent of the difference between the contract price for the lumber and the value at the time and place the same should have been delivered as agreed, if there were lumber, purchasable, of the quality and quantity contracted for at such time and place; otherwise the difference between such contract price and the value at such time at Milwaukee, less half the reasonable fees for the services of an inspector and what it would have cost to transport the lumber from the agreed delivery point to Milwaukee. The court required the jury to find whether "f. o. b." as used in the contract meant free on board cars, instructing them that if such were the case it was defendant's duty to furnish the cars unless there was an agreement to the contrary. The court further instructed the jury that plaintiff, in order to recover, must prove by a fair preponderance of the evidence that the words "f. o. b. cars" as used mean that the defendant would furnish the cars for the shipment of the lumber.

At the close of the evidence defendant's counsel moved the court for a verdict, which was refused. The verdict was in favor of the defendant, and judgment was entered thereon, from which this appeal was taken, questions being duly saved for review discussed in the opinion.

For the appellant there was a brief by *Bohmrich & Williams,* and oral argument by *L. G. Bohmrich.*

For the respondent there was a brief by *Salter & Holland,* and oral argument by *T. M. Holland.*

MARSHALL, J. The motion for a verdict in appellant's favor was based on the assumption that from the contract or evidence, or both, it conclusively appeared that it was respondent's duty to furnish the cars. The trial court's view, as indicated in the statement, was that *prima facie* the contract requiring respondent to deliver the logs f. o. b. cars at the point where the transit by rail was to commence, burdened appellant with the duty of furnishing the cars. So the jury were instructed:

"The plaintiff must prove by a fair preponderance of evidence that the words 'f. o. b. cars' as used in this case mean that the defendant is required to furnish the cars for the shipment of the lumber in question."

That is consistent only with this broad proposition being correct: As between buyer and seller of property to be conveyed by a common carrier, the seller having agreed to deliver the subject of sale to the buyer "f. o. b. cars" at the place where the transit is to begin, the implication of law or of fact is that the buyer is to furnish the cars in place ready for loading. Doubtless the learned circuit court was guided by *Boyington v. Sweeney,* 77 Wis. 55, 45 N. W. 938, where, as regards a contract the same in effect as the one before us, requiring the seller of logs to deliver the same on board cars for shipment, though the set phrase "f. o. b. cars" was not used, it was said:

"The duty of the defendant in regard to the delivery of the logs under contract ended when they were placed on the cars. By the terms of the contract the plaintiffs were to receive them on the cars, and then the absolute title passed to them. The defendant was in no way bound to pay for the use of the cars on which they were to be loaded, or to pay for their transportation after they were placed on the cars. The plain inference to be derived from the contract is that the plaintiffs were to furnish the cars to receive and transport the logs to their destination."

No authority is cited to the proposition. Reference in the opinion to the attitude of counsel in respect to the matter and the printed arguments, indicate that the point was not contested in such a manner as to stimulate a very careful consideration of a doubtful question. The proposition seems contrary to universal understanding, which ought to be deemed a matter of judicial cognizance without the aid of evidence or adjudged cases. We apprehend that when one buys merchandise of another to be shipped to him by rail from a distant point, the delivery to be made to him f. o. b. cars at the point of starting, such other, as a matter of course, is expected

to obtain from the railway company the necessary cars upon which to load the subject of the deal. Yet the doctrine of the *Boyington Case* is not wholly without support. *Kunkle v. Mitchell,* 56 Pa. St. 100; *Dwight v. Eckert,* 117 Pa. St. 508, 12 Atl. 32; *Hocking v. Hamilton,* 158 Pa. St. 107, 27 Atl. 836. However, this court, in the recent case of *John O'Brien L. Co. v. Wilkinson,* 117 Wis. 468, 94 N. W. 337, expressly repudiated such doctrine, holding that a seller, in the circumstances stated, impliedly agrees to obtain the cars and not hold the buyer to any obligation till the goods are loaded thereon. So far as *Boyington v. Sweeney* is to the contrary it was, in effect, though not in express terms, there overruled. This language was used by Mr. Justice DODGE, speaking for the court:

"The general rule is that one who undertakes to accomplish a certain result, by necessary implication agrees to supply all the means necessary to such result. . . . Under this general rule it would seem pretty obvious that one undertaking to load logs upon railroad cars ordinarily assumes the duty of obtaining the cars on which to load the logs, as much as any other implements with which to do the work. Both are alike in the open market, as much at the command of one as another, and the obtaining of each is equally essential to the accomplishment of the result."

"For the reasons stated, we cannot avoid the conclusion that the written contracts, upon their face, by necessary implication imposed on appellants the duty of obtaining the cars upon which they had agreed to load the logs."

That is supported by authorities generally holding that a sale f. o. b. cars means that the subject of the sale is to be placed on cars for shipment without any expense or act on the part of the buyer, and that as soon as so placed the title is to pass absolutely to the buyer, and the property be wholly at his risk, in the absence of any circumstances indicating a retention of such control by the seller as security for purchase money, by preserving the right of stoppage *in transitu. A. J. Neimeyer L. Co. v. B. & M. R. R. Co.* 54 Neb. 321, 74 N. W.

670; *Congdon v. Kendall,* 53 Neb. 282, 73 N. W. 659; *Cape-hart v. Furman F. I. Co.* 103 Ala. 671, 16 South. 627; *Shef-field F. Co. v. Hull C. & C. Co.* 101 Ala. 446, 14 South. 672; *Knapp E. Works v. New York I. W. Co.* 157 Ill. 456, 42 N. E. 147; *Silberman v. Clark,* 96 N. Y. 522; *Ex parte Rose-vear C. C. Co.* 11 Ch. Div. 560; *Miller v. Seaman,* 176 Pa. St. 291, 35 Atl. 134; Benjamin, Sales (6th ed.) 682; 1 Mechem, Sales, § 741, note; 4 Elliott, Railroads, § 1425. All of such authorities declare that a sale "f. o. b. cars" so plainly indicates that the seller, without expense to the buyer, is to deliver the subject of the sale on cars ready to be taken out by the carrier that the term is not open to construction. Some hold that evidence is admissible to show that the letters "f. o. b." as used in mercantile contracts stand for the words "free on board;" but, generally speaking, it is held that the courts will take judicial notice that such is the meaning, and that the import of the words is too plain to call for or permit judicial construction. It may be that such meaning would only *prima facie* include procurement by the seller of the car-rier of cars, in place, ready for loading and that a general custom, so well established as to become a part of the contract, might vary such *prima facie* meaning. But the burden would necessarily be upon the seller to establish such custom. It fol-lows that the instruction under consideration is erroneous, and that, so far as such error led to the decision against appellant on the motion for a verdict, such decision is erroneous.

There was evidence on the part of the defendant to the effect that at the time of the verbal agreement preceding the making of the written contract, plaintiff said he would fur-nish the cars. The learned trial court denied the motion for judgment, assuming that such evidence raised a question for the jury. That is plain, because he expressly referred to such evidence in submitting the cause as to whether the plaintiff did or did not agree to furnish the cars. In that it seems the

rule, that a written contract cannot be varied by parol evidence of what was said between the parties prior to or at the time of the making of the writing, was overlooked. The final result of all negotiation eventuating in the making of a contract which is reduced to writing, in the absence of relievable fraud or mistake, is conclusively presumed to be embodied therein, unless the writing appears clearly to be merely a part execution of an entire verbal contract, which is not the case in the instance before us. Here was the ordinary occurrence of closing contractual negotiations by reducing the consequent verbal agreement to writing. If, in doing so, anything was left out, the party prejudiced is without remedy upon the contract except to appeal to equity for its reformation and the enforcement thereof as corrected. *John O'Brien L. Co. v. Wilkinson,* 117 Wis. 468, 94 N. W. 337; *Braun v. Wisconsin R. Co.* 92 Wis. 245, 66 N. W. 196; *Herbst v. Lowe,* 65 Wis. 316, 26 N. W. 751. In *Braun v. Wisconsin R. Co.* it was said that the exception mentioned, to the exclusion of evidence of what was said or occurred at the time of making a written contract, is never to be so extended as to permit evidence of mere contemporaneous stipulations or conditions, the writing being the agreement reached and not a mere part performance or incident of it. It follows that the oral testimony as to what plaintiff said respecting who was to furnish the cars, when the contract was made, cannot be regarded as a justification for denying appellant's motion for a verdict.

Whether, in denying the motion, the learned circuit court was in doubt as to whether the term "f. o. b. 'cars'" was ambiguous in that it might or might not mean that the seller was to place the lumber on cars and procure them to be put in place for that purpose, and that such doubt involved a question of fact, is not altogether certain. This language was used in the charge:

"The evidence that 'f. o. b.' mean free on board cars is not disputed. In deciding this case you must take into consideration the written contract, . . . and you will observe the letters 'f. o. b.' are used therein, and if you find 'f. o. b.' mean free on board cars, it was the duty of the defendant to furnish the cars."

There being no question, as we have seen, but that the meaning of "f. o. b." as used in the contract is free on board cars, the court erroneously denied the motion for a verdict upon the theory that it was permissible for the jury to find some other meaning.

It does not seem to have occurred to the learned circuit court that "free on board cars" might not so conclusively indicate that the seller was to provide cars in place for him to load the lumber as to preclude evidence of a binding custom to the contrary. Witnesses were erroneously permitted to testify as to the meaning of "f. o. b." when, as we have seen, it is so plain that it was not permissible to explain it by custom or otherwise. The meaning of language used in a contract can only be shown by custom when it is ambiguous. Such evidence is permissible to interpret or explain or aid in that regard, not to contradict or add something not within the reasonable meaning of the language of the contract. 1 Greenl. Ev. 294, 295. In *Sheffield F. Co. v. Hull C. & C. Co.* 101 Ala. 446, 481, 14 South. 672, and the other case to which we have referred, it is held correctly, as we believe, that the meaning of "f. o. b." and "free on board," as customarily used in mercantile contracts, is so obvious as not to be open to interpretation. Whether such meaning includes, under the circumstances of this case, the duty of the seller to procure the cars in place for his use in loading the merchandise, and evidence is not permissible to show the existence of a custom which the parties contracted with reference thereto, is not altogether plain, but we are constrained to hold that it does. In any event, the inference from the use of such term could

only be changed by clear proof of the existence of a custom, and that the buyer knew thereof at the time of contracting, or that it had existed so long that, presumably, he knew thereof. *Hall v. Storrs,* 7 Wis. 253. There was no such clear evidence here. There was no definite evidence at all in the matter.

The court correctly instructed the jury that plaintiff duly demanded of the defendant shipment of the lumber under the contract. That, in connection with what has heretofore been said, shows there was nothing to submit to the jury as to whether defendant was guilty of an actionable breach of the contract as alleged in the complaint. Therefore the court erred in refusing to take all the questions from the jury except such as related to the damages appellant was entitled to recover.

Complaint is made because the court permitted evidence to go to the jury as to the market value, at the agreed time and place for the delivery, of such lumber as that in question, though there was no evidence that there was a like quantity of such lumber then and there, or in that vicinity, which could have been purchased. A careful examination of the record satisfies us that error was committed in this respect. Respondent's counsel refers to places where it is said evidence can be found supporting his contention, but we are unable to find it. It is not in the record. On the contrary, the evidence referred to establishes the contention of appellant. The statement is made that lumber like that in question could have been obtained in most any lumber yard in the vicinity of Butternut or along the Central Railroad, referring to the evidence of Mr. Altman, who testified, however, in effect, that no such quantity of lumber of the agreed quality was so obtainable. A like quantity of lumber of better quality could have been so obtained, but none of consequence of the same quality. As the evidence stood when the case was submitted to the jury, it seems that the rule in *Cockburn v. Ashland L.*

*Co.* 54 Wis. 619, 12 N. W. 49, governed, as claimed by appellant's counsel. The general rule, as there stated, is:

"In actions to recover damages for the breach of an executory contract to sell and deliver goods, the difference between the market price of the goods at the time and place specified in the contract for delivering the same and the contract price, is the measure of damages. The basis of this rule is, that on failure of the vendor to deliver, the purchaser may go into the market at the time and place of delivery, and supply himself with the same kind of goods at the market price. Hence, the difference between what he is compelled to pay for the goods, and what they would have cost him had the vendor performed his contract, justly measures the damages which he has sustained by the breach of the contract. But this rule presupposes that the purchasers may go into the market at the agreed time and place of delivery and obtain the goods."

But it is said that, where the basis for the rule does not exist, then some other rule must be applied that will, so far as practicable, satisfy the broad principle that recoverable damages for breach of contract are "such as may fairly and reasonably be considered as either arising naturally, i. e., according to the usual course of things, from such breach, or such as may reasonably be supposed to have been in contemplation of both parties, at the time they made the contract, as the probable result of the breach of it."

Respondent knew at the time the contract in question was made that the subject thereof was to be shipped to appellant at Milwaukee, Wisconsin. He must have apprehended that if he failed to make the delivery according to agreement, and appellant could not supply himself with the same amount and quality of lumber at or in the vicinity of the delivery point, he would probably suffer damages to the extent of the difference between the market value of such lumber at Milwaukee at the agreed time for delivery, and the contract price, less what it would have cost appellant for inspection fees and freight had the contract been performed, with interest on the principal sum of damages at the legal rate from the time

of the breach to the date of the recovery. That is the rule of damages contended for by appellant's counsel, and is approved.

Some other questions are presented by appellant's counsel, but they are all covered incidentally by the conclusions heretofore reached, or are rendered thereby immaterial, and therefore specific reference thereto and a discussion thereof becomes unnecessary and will be omitted.

*By the Court.*—The judgment is reversed, and the cause remanded for a new trial.