W. B. HURST, *Doing Business as W. B. Hurst & Co.*,
v. THE ALTAMONT MANUFACTURING COMPANY.

No. 14,552.        (85.Pac. 551.)

SYLLABUS BY THE COURT.

1. CONTRACT—*Sale—Delivery "f. o. b."—Duty to Furnish Cars.*
When a seller of merchandise agrees to sell twenty car-loads
thereof, to be delivered to the buyer "f. o. b. cars" at the
seller's place of business, it is not the duty of the buyer to
furnish the cars to receive the goods; and, in an action by
the buyer against the seller to recover damages for non-
delivery of the merchandise under such a contract, the peti-
tion need not allege that the plaintiff furnished cars ready to
receive the goods.

2. WORDS AND PHRASES—*"f. o. b. Cars" Defined.* The phrase
"f. o. b. cars," when used in a contract between a buyer and
seller of commercial commodities, where the use of a com-
mon carrier is necessary, means that the seller will secure the
cars, load them, and do whatever may be required to ac-
complish the consignment and shipment of the goods to the
buyer, free of expense to him.

Error from Bourbon district court; WALTER L.
SIMONS, judge. Opinion filed April 7, 1906. Reversed.

*John H. Crain*, and *John V. McKinney*, for plaintiff
in error.

*Keene & Gates*, for defendant in error.

The opinion of the court was delivered by

GRAVES, J.:   A demurrer was sustained to the plain-
tiff's petition by the district court. The plaintiff ex-
cepted, and brings that question here for review. The
demurrer contained two grounds: (1) That several
causes of action were improperly joined; (2) that the
petition did not state facts sufficient to constitute a
cause of action. The demurrer was sustained gen-
erally. The record does not show whether the court
considered the petition insufficient for both reasons or
not. The case has been argued as though the second

ground of the demurrer was the only one involved, and we shall so assume.

The petition is of considerable length, and the points discussed by counsel can be sufficiently stated without giving a full copy of the pleading. After the proper formal and introductory averments the petition states, in substance, that the defendant offered to sell to the plaintiff certain goods, at a stated price, as shown by "Exhibit A"; that the plaintiff accepted the offer, as shown by "Exhibit B"; that the plaintiff afterward made an additional order, as shown by "Exhibit C"; that later the plaintiff, by letter, confirmed and renewed previous orders, which were accepted by the president of the defendant company, as shown by "Exhibit D"; that in pursuance thereof shipping orders were sent to, and received by, the defendant, as shown by "Exhibit E"; that defendant received all shipping orders sent by the plaintiff as aforesaid, but "neglected and refused to deliver said egg-cases as it agreed to do, and as ordered by this plaintiff"; that at the time the first shipment should have been made, and ever since, such egg-cases have been worth from one and a quarter to two cents more than the contract price; and that the plaintiff has been damaged $1000. Then follows a prayer for judgment. The exhibits are as follow:

"Exhibit A."

"Altamont, Ill., January 31, 1903.
"W. B. Hurst & Co., St. Louis, Mo.:
"Dear Sir—Yours of yesterday at hand ordering ten cars standard whitewood cottonwood-veneer egg-cases. We note that you speak of a one-piece end. The case we quoted you on has a two-piece dressed end, ready cleated. The price quoted you of nine cents, cars, factory, is at the Cairo, Ill., factory, and the rates as before named you are as follow: Eldorado, six cts. per 100; Marion, five cts. per 100; Mt. Vernon, seven cts. per 100.

"Terms are as you mentioned: two per cent. off for cash ten days from date of invoice.

"These cases average seven and one-half pounds

each—possibly a little less. Hence it is no trouble to tell almost precisely what the case will cost you f. o. b. cars at the above-named stations. Cars are very scarce, and we would suggest that you place your order early; say at least twenty days in advance of time you expect to use them. Awaiting your prompt reply, we are,              Respectfully yours,

     ALTAMONT MANUFACTURING COMPANY."

"Exhibit B."

"ST. LOUIS, Mo., February 2, 1903.

"*Altamont Manufacturing Company, Altamont, Ill.:*

"DEAR SIRS—Replying to your favor of the 31st, if ends are two piece and cleated, as you say they are, balance of case filling required dimensions, being a standard whitewood case (veneer), it is all right. We will take the ten cars. You may file our order now for shipment of one car to Fayetteville, Ark., and one car to our address, South Greenfield, Mo. Would be glad to have you get these off at as early a date as possible. Since we know that the cases are at Cairo, we have bought a great many there, and know what the freight rates are ourselves to our various stations.

     Yours truly,      W. B. HURST & CO."

"Exhibit C."

"ST. LOUIS, Mo., February 5, 1903.

"*Altamont Egg-case Company, Altamont, Ill.:*

"GENTLEMEN—Confirming our conversation by telephone this morning, you can enter our order for ten more cars of cases to be same as last order of ten cars, at nine cents f. o. b. Cairo. We instruct you to order out, immediately, one car to Fredonia, Kan.; one car to Monett, Mo.; one car to Harrison, Ark.; one car to Springfield, Mo.; one car to Fort Scott, Kan. On the 3d we gave you order for one car for S. Greenfield, Mo., and one car to Fayetteville, Ark. Let these cars go forward first, the Fredonia car next, and then let the others go as they come.

"Now, relative to your pay: Do not worry about that. We supposed that Dun and Bradstreet had our rating. But you have our permission to address them, or to address the Citizens' National Bank of Fort Scott, Kan., National Exchange Bank, Springfield, Mo., Bank of Commerce here, or any of the commercial agencies. It is our intention, however, to discount all these cases, as the old company did with you. We are

agreeable to your passing draft if you desire, but make it subject to arrival of car, for we would not want to pay the draft until cars arrived and were properly checked. Kindly let us hear from you promptly confirming above order, and oblige,
          Yours truly,          W. B. HURST & CO."

                    "EXHIBIT D."

                         "ST. LOUIS, MO., 2-9-'03.
*"Altamont Manufacturing Company, Altamont, Ill.:*
    "GENTLEMEN—This will confirm purchase from you of thirteen cars of veneer cases (in addition to the seven cars, orders for which have already been placed with you) at nine cents track, Cairo, Ill., the case to be standard veneer case, made of cottonwood.
    "We will give you shipping instructions on these thirteen cars within the next few days.
          Yours very truly,          W. B. HURST & CO."
    "Accepted: Altamont Manufacturing Company— J. E. R."

                    "EXHIBIT E."

                         "February 18, 1903.
*"Altamont Manufacturing Company, Altamont, Ill.:*
    "DEAR SIRS—To conform with our contract entered into a few days ago, you will kindly book our orders on thirteen cars of cases, to be shipped as promptly as possible to the following points: Two cars to Springfield, Mo.; two cars to S. Greenfield, Mo.; one car to Fredonia, Kan.; one car to Parsons, Kan.; one car to Cuba, Mo.; three cars to Monett, Mo.; one car to Clinton, Mo.; one car to Fayetteville, Mo.
    "We would like, if possible, for you to fill these cars in the following order, shipping the first two cars to Fayetteville, Ark., two cars to Springfield, Mo., two cars to South Greenfield, Mo., three cars to Monett, Mo., one car to Clinton, Mo., one car to Cuba, Mo., one car to Parsons, Kan., one car to Fredonia, Kan.
    "All of these points are now ready to take the cars in as promptly as they are shipped; so kindly move them as promptly as you can.
    "Our egg season is open, and we will need them all between now and March 1.          Yours truly,
                    W. B. HURST & CO."

    The supposed weakness of this petition, as we understand from the discussion of counsel, lies in its want of an allegation that the plaintiff furnished the

necessary cars at the time when shipment was desired. On the other hand, it is contended that it was the duty of the defendant to obtain the cars from the carrier, load the goods therein, and consign them to the plaintiff. The real point in the controversy, therefore, seems to be this: Whose duty was it under the contract between these parties to cause the carrier to place cars in position to receive the goods to be shipped?

The exhibits attached to the petition constitute the contract. If concisely stated, it would be substantially as follows: Ship to us immediately, or as promptly as possible, twenty cars of egg-cases, distributed as hereinafter stated. We will pay therefor nine cents a case, f. o. b. cars at Cairo, Ill., payment to be made when cars arrive at the point of destination. This order was accepted.

In construing this contract the difficulty centers in determining what the parties intended by the clause "f. o. b. cars, Cairo, Ill." It is conceded that the letters "f. o. b." are for brevity used instead of the words "free on board." The clause when expressed in words, therefore, stands thus: Free on board the cars at Cairo, Ill. This language has been used in the transaction of commercial business many years, and has by general custom and usage among buyers, sellers and shippers acquired a definite and specific meaning, which is well understood and of common knowledge, and of which courts will take judicial notice. The significance of this language, when standing alone, is so well established that it has been generally held that proof in support of such signification is unnecessary and improper. (*Sheffield Furnace Co. v. Hull Coal & Coke Co.*, 101 Ala. 446, 14 South. 672; *Capehart et al. v. Furman Farm Improvement Co.*, 103 Ala. 671, 16 South. 627, 49 Am. St. Rep. 60; *Vogt v. Schienebeck*, 122 Wis. 491, 100 N. W. 820, 67 L. R. A. 756, 106 Am. St. Rep. 989; *Hunter v. Kramer*, 71 Kan. 468, 80 Pac. 963.)

This, like any other language, may, however, be used in a sense different from that in which it is generally understood; and it may receive an interpretation from the acts of the parties using it different from what the words seem to indicate. It is important to bear this in mind, as in the decided cases where the words "free on board the cars" have been defined the decisions generally turn upon some modifying circumstance, wholly outside of, and apart from, the language itself. The decisions are practically unanimous in holding that these words bind the seller to place the goods on board the cars free of expense to the buyer; also that the carrier is the bailee of the consignee, and that delivery to the carrier amounts to delivery to the buyer. We are asked to extend this meaning a step further.

It is apparent that the goods cannot be loaded until cars are in place to receive them. The duty to select the carrier and cause it to furnish the cars rests somewhere. The plaintiff in error insists that this duty belongs to the seller. At this point the authorities part company, and seem to be somewhat conflicting. A careful examination of the cases, however, shows this conflict to be more apparent than real. A few decisions, fairly recent in date, have held that this duty devolves upon the buyer. These cases, however, are limited to the particular facts presented, and in nearly every instance such facts furnish a reason for the meaning given to the contract under consideration. The most important of these cases are: *Consolidated Coal Co. v. Schneider,* 163 Ill. 393, 45 N. E. 126; *Hocking v. Hamilton et al., Appellants,* 158 Pa. St. 107, 27 Atl. 836; *Baltimore & L. Ry. Co. v. Steel Rail Supply Co.,* 123 Fed. 655, 658, 49 C. C. A: 419; *Evanston Elevator & Coal Co. v. Castner,* 133 Fed. 409; *Neimeyer Lumber Co. v. Burlington & M. R. R. R. Co.,* 54 Neb. 321, 326, 74 N. W. 670, 40 L. R. A. 534.

In the case of *Consolidated Coal Co. v. Schneider, supra,* the coal company leased its mine to the plain-

tiff, whereby the lessee was to furnish coal to the lessor, to be delivered at the mine, which was some distance from the railroad station. The lessor furnished cars for a time, and stated that it would continue to do so. Under these facts it was held to be the duty of the lessor to furnish the cars.

In the case of *Hocking v. Hamilton et al., Appellants, supra,* the commodity sold was coal, to be delivered at the tipple, and the buyer agreed to receive it there. This was not a contract to deliver at any railroad station, but at a different place, and because of this agreement it was held to be the duty of the buyer to furnish the cars.

In the case of *Baltimore & L. Ry. Co. v. Steel Rail Supply Co., supra,* the plaintiff sold some old rails to the defendant, to be shipped upon orders stating destination and name of consignee, and no such orders were given. It was held that as the shipper could not know when, where or to whom the shipment was to be made he was not bound to furnish the cars.

The case of *Evanston Elevator & Coal Co. v. Castner, supra,* was also a case where coal was to be delivered at the mine. In that case the court referred to the foregoing and other cases, and while apparently approving all of them limited the decision to the facts of that case, and held it to be the duty of the buyer to furnish the cars, but did not decide what the phrase "f. o. b." means when standing alone.

The following cases hold that, under the *prima facie* meaning of the phrase "f. o. b.," it is the duty of the buyer to furnish the cars: *Kunkle v. Mitchell,* 56 Pa. St. 100; *Wackerbarth v. Masson,* 3 Camp. (Eng.) 270; *Dwight v. Eckert,* 117 Pa. St. 490, 12 Atl. 32; *Chicago Lumber Co. v. Comstock,* 71 Fed. 477, 18 C. C. A. 207; *Davis v. Alpha Portland Cement Co.,* 134 Fed. 274, 278.

In the case of *Boyington and another v. Sweeney,* 77 Wis. 55, 45 N. W. 938, it was held that the duty of furnishing the cars rested upon the buyer. This de-

cision was practically overruled by the subsequent case of *John O'Brien Lumber Co. v. Wilkinson,* 117 Wis. 468, 94 N. W. 337, and the contrary rule was adopted. The latter case was followed in the later case of *Vogt v. Schienebeck,* 122 Wis. 491, 100 N. W. 820, 67 L. R. A. 756, 106 Am. St. Rep. 989, decided by the same court in September, 1904.

A noticeable feature of the cases here cited holding it to be the duty of the buyer to furnish the cars is that none of them involves an ordinary commercial transaction like, or similar to, the one here presented. On the contrary, each case had peculiar and exceptional conditions which clearly distinguish it from this case, and which furnished the reason for the decision given. We do not, therefore, regard these cases as in point on the question here involved.

This case can be disposed of, so far as the demurrer is concerned, without defining the meaning of the phrase "f. o. b. cars, Cairo, Ill.," when standing alone. We think the correspondence attached to the plaintiff's petition, when considered as a whole, contains language outside of this phrase which fairly indicates what was intended by it. It is not difficult to hold, aided by this language, that the formula "f. o. b. cars, Cairo, Ill.," was understood by both parties to mean that the defendant would do all that was necessary to be done to accomplish the shipment of the goods to the plaintiff as directed, free of expense or further attention on the part of the latter.

Here this opinion might end. But the case must be returned for further proceedings, and as we cannot anticipate what facts will be developed when the issues are finally closed we deem it best to consider and decide the whole question discussed by the parties. It is our understanding that the phrase or formula "f. o. b. cars" has by long usage and custom acquired throughout the business circles of this country a definite and specific meaning, generally understood by all business people. When such phrase or formula is used

in a business contract, between a buyer and seller of ordinary commercial commodities, where the use of a common carrier is necessary, the parties intend thereby that the seller will, at his own expense, do all that may be necessary to accomplish the loading and consignment of the goods to the buyer, including the procuring of cars upon which to load the commodities sold; and when nothing appears to modify or limit this meaning courts should enforce the contract so as to effectuate this intent. This rule is reasonable; it harmonizes with existing business conditions, and is the universal practice among business people.

It is conceded that by this phrase the seller is bound to deliver the goods to the buyer by placing them on board the cars. How can he do this unless he secures the cars? Why say that this duty belongs to the buyer? The language of the contract is silent upon this question. By the letter of the agreement it may be said that neither party has agreed to perform this duty, but it may not be said that there was no understanding upon this subject. Without such an understanding the contract would be incomplete and unenforceable. What the parties intended upon this subject can only be ascertained by interpretation, and to do this the situation of the parties when the contract was made, the subject-matter thereof, and all the attendant circumstances and conditions, must be considered.

It is within common knowledge that carriers are willing and even anxious to receive freight for transportation, and to invite business they furnish every reasonable facility and convenience to shippers. It is also well known that wholesale houses and manufacturing establishments have special shipping arrangements with carriers, whereby their business is provided for and accommodated. The facilities of the latter for the procurement of cars are, for many reasons, superior to those of the buyer.

In large cities where many railroads center, having

receiving stations more or less remote from each other, it might be a material advantage to a shipper to have the privilege of selecting the carrier to whom his goods should be delivered, which he might do if it was his duty to furnish the cars. The inconvenience which the seller would encounter in securing cars upon which to load the goods sold is merely nominal, while the difficulties to which the buyer would be subjected are such that it would be unreasonable to assume that he would undertake so to do. In view of the many serious objections in the way of such a contract it seems clear that, if the parties to the agreement under consideration had deemed it necessary to state specifically who should perform this duty, the seller would have been named. This manifest intention of the parties should be made effectual by giving to their contract the same legal effect which it would have if such agreement had been specifically written therein.

In the case of *John O'Brien Lumber Co. v. Wilkinson*, 117 Wis. 468, 94 N. W. 337, where the meaning of the phrase "f. o. b. cars" was the point discussed, it was said: "It would seem pretty obvious that one undertaking to load logs upon railroad-cars ordinarily assumes the duty of obtaining the cars on which to load the logs, as much as any other implements with which to do the work." (Page 471.) It was also said: "We cannot avoid the conclusion that the written contracts, upon their face, by necessary implication imposed on the appellants the duty of obtaining the cars upon which they had agreed to load the logs." (Page 474.) This language was approved and followed in the case of *Vogt v. Schienebeck*, 122 Wis. 491, 100 N. W. 820, 67 L. R. A. 756, 106 Am. St. Rep. 989.

We conclude that the judgment of the district court should be reversed. It is, therefore, directed that such judgment be vacated; that the demurrer to the petition be overruled; and that the further proceedings had be in accordance with the views herein expressed.

All the Justices concurring.