ALLEN, Appellant, vs. WOLF RIVER LUMBER COMPANY, . Respondent.

SAME,· Respondent, vs. SAME, Appellant.

*April 3—April 29, 1919.*

*Sales: Construction of contract: Correspondence: Quantity of goods: Performance: Delivery: Designated place: Title: Breach: Damages: Contracts: Offer: Acceptance.*.

1. A sales contract entered into by correspondence will be construed from the whole of the correspondence.
2. Where the seller wrote to the buyer stating that he was going to peel about 1,000 cords of bark during the year and offering to sell such amount to the buyer, a contract entered into, after considerable correspondence as to price, by the buyer's acceptance of the seller's offer of "our peel this year" at a stipulated price, was a contract for 1,000 cords.
3. One who makes a proposal to another to be answered by return mail, in the absence of a revocation, holds himself ready and willing to abide by it until acceptance or rejection can reach . him by return mail.
4. Where the seller's offer of goods at a stipulated price at any point having a certain rate is accepted, the seller does not complete the contract and is not entitled to the price until the goods are delivered at a point having such rate, under sub. 5, sec. 1684t—19, Stats.
5. Unless provision to the contrary is made, title passes with delivery.
6. Where, under a contract for goods to be delivered at any point having a certain rate, the buyer, pursuant to a request for shipping directions, named a point having such rate, such point was the place of delivery.

7. Where the time of delivery was not specified, the buyer's meas-
ure of damages under sub. 3, sec. 1684*t*—67, Stats., upon the
seller's failure to deliver, was the difference between the con-
tract price and the market price at the place of delivery at the
time of the seller's refusal to deliver.

APPEALS from a judgment of the municipal court of
Langlade county: T. W. HOGAN, Judge. *Modified and
affirmed.*

Action to recover damages for breach of a contract to de-
liver certain tan-bark sold to plaintiff.

June 25, 1915, defendant wrote plaintiff at Buffalo, New
York, as follows:

"Your card of the 23d received. I am peeling about a
thousand cords of bark this year; have now between 600
and 700 cords peeled from the tree.  The most of this will
not be shipped until sleighing comes along about the first of
the year. . . . I will sell you the 500 or 1,000 cords of bark,
2,240 pounds to the cord, for $13.50 f. o. b. Buffalo, but
understand a good deal cannot be delivered until winter, but
if you wanted 200 or 300 cords before, I could arrange to
ship it to you."

June 28th plaintiff wrote defendant at Antigo, Wisconsin,
as follows:

"Replying to your esteemed favor of the 25th.  Would
like very much to have the 1,000 cords bark, but·the price
is too high for me.  If you could make that price $12 per
2,240 pounds, I would be inclined to place it, though we are
buying our local bark for $10.50 to $11 per ton. . . ."

June 30, 1915, defendant replied:

"Now I will tell you what I will do. · I will split the differ-
ence with you and call it $12.75 f. o. b. Buffalo, 2,240 pounds
to the cord."

In reply plaintiff wrote under the date of July 2, 1915:

"I have done my best to get the price from tanners to meet
your price of $12.75, Rochester, New York, but can't do it.
They claim extracts are cheaper and they use them.  Per-

haps another season I can use some bark from you, but $12— 2,240 pounds Deld Rochester rate is all our market will stand this season."

July 21, 1915, defendant wrote plaintiff as follows:

"In regard to our hemlock bark, inasmuch as you offer us $12 per cord delivered on a Rochester rate of freight, if you cannot pay us more we are inclined to accept your price of $12 per cord of 2,240 pounds to the cord delivered on a Rochester rate of freight, for our peel this year. Please let us know how to bill this bark. I may ship a car or two in a few days, and then the balance will come out when we have snow. If this is satisfactory let us know by return mail."

July 23d plaintiff replied:

"Replying to yours 21st. Confirm purchase of your bark at $12 per 2,240 pounds delivered Rochester rate. You may ship the cars now ready to *H. C. Allen,* Olean, New York, Erie delivery. Send papers to me here and I will look out for cars when they arrive. Would like as much of this bark shipped promptly as possible. Kindly advise me about the amount to be shipped now and amount for winter shipment, and oblige. If you can ship 300 cords now, I would like it very much."

In reply to this defendant wrote plaintiff on July 24, 1915:

"On account of not hearing from you, I, today, sold what bark we had peeled to Grand Rapids, Michigan, people, getting $6.75 f. o. b. cars Monico for same. As I wanted to dispose of what we had as I stopped peeling on account of the low prices. As shipping it to Buffalo the rate is 21c and to Syracuse the rate is 26c so it would leave me a loss, so when I got my price I sold it all."

Then follow a number of letters in which plaintiff insists he is entitled to the 1,000 cords of bark and defendant offers 200 cords of bark at a different price and upon the payment of $1,000 down. The new terms are not accepted and bark is not shipped to plaintiff.

The defendant's principal place of business was at Antigo, Wisconsin, and plaintiff's place of business was in Buffalo.

New York. The tan-bark was located in the woods near Monico, Wisconsin, about forty miles north of Antigo. The evidence showed that defendant peeled only 317 cords during 1915. A jury was waived, and the court found that the place of delivery of the bark was Monico, Wisconsin, that the quantity sold was 317 cords, the peel of that year, plus 200 cords which defendant bought at Mattoon, Wisconsin; that plaintiff's damage was the difference between the contract price at Monico, which the court found was the Rochester delivery price of $12 per cord, less the freight rate of $6.16 per cord from Monico and $5.82 from Mattoon, and the price of bark at Monico and Mattoon found to be $6.25 per cord of 2,240 pounds. This made a loss of forty-one cents per cord on the 317 cords and a loss of seven cents per cord on the 200 cords bought at Mattoon, in all a loss of $143.97, for which amount it awarded judgment to plaintiff. Both parties appealed.

For the plaintiff the cause was submitted on the briefs of *Henry Hay* of Antigo.

For the defendant there was a brief by *E. J. Goodrick,* attorney, and *H. F. Morson,* of counsel, both of Antigo, and oral argument by *Mr. Goodrick.*

VINJE, J. Plaintiff appealed because he claimed the amount of bark sold was 1,000 cords; the place of delivery was Olean, New York; and the measure of damages the difference between the contract price and the market price of bark at Olean at the time of the breach. The defendant appealed because it claimed the amount of bark sold was 317 cords and did not include the 200 cords bought at Mattoon; the place of delivery was Antigo; and the measure of damages the difference between $12, less $5.82, the freight rate from Antigo, and the market price at Antigo, which it claimed did not exceed $6.25 per cord. It will thus be seen

Allen v. Wolf River L. Co. 169 Wis. 253.

that the amount of bark sold, the place of delivery, and consequently the measure of damages, are in dispute.

As to the amount of bark sold the defendant's claim is that its letter of July 21st offering to sell its peel of this year and the acceptance of that in plaintiff's letter of July 23d constitutes the contract between the parties. The trial court adopted this view, for it excluded from evidence the letters of June 25th and of July 2d. It is clear that the whole correspondence relating to this transaction is admissible in evidence to show what the contract was, and the letters mentioned were improperly excluded. The contract must be read out of the whole correspondence, since every letter therein related to the same matter and no such interval elapsed between any as to warrant an inference that the parties considered they were starting anew to make a contract.

From the whole correspondence we reach the conclusion that defendant offered to sell 1,000 cords and plaintiff accepted that offer. If so, that made a contract for the sale of 1,000 cords. Our conclusion is based upon the fact that defendant in its first letter stated it was going to peel about 1,000 cords that year and had already between 600 and 700 cords peeled; that it offered to sell the 500 or 1,000 cords; that plaintiff replied he would like to have the 1,000 cords if the price was right. After that the correspondence was all about the quality of the bark and the price. So when defendant on July 21st accepted plaintiff's price for this year's peel, it knew plaintiff understood it was to be at least 1,000 cords, and it must be held to have made an offer of that amount. This is confirmed by the fact that, in letters passing between the parties subsequent to the breach, plaintiff claims the quantity was 1,000 cords and defendant does not deny such claim, though it offers him only 200 cords upon different terms. It is also in evidence that plaintiff, immediately after accepting the offer from defendant, resold 1,000

cords to Eastern tanners in the belief that such was the amount he had bought. This evidence, of course, bears only upon the question of what he understood the contract to be, and could not bind defendant if he made no offer of 1,000 cords. But it is clear from the evidence that he did make a specific offer of 1,000 cords, which plaintiff said he wanted if the price was right. It is also uncontradicted that defendant represented that its peel for that year would be about 1,000 cords. Hence from the correspondence had, when it made an offer of this year's peel it meant 1,000 cords.

The breach of contract by the defendant is clearly established. In its letter of July 21st, accepting plaintiff's terms, it said: "If this is satisfactory, let us know by return mail." This authorized plaintiff to accept by return mail and he did so accept. A party who makes a proposal to another to be answered by return mail, in the absence of a revocation, holds himself ready and willing to abide by it until acceptance or rejection can reach him by return mail. 6 Ruling Case Law, 611. Here the defendant did not wait until a letter could reach him from Buffalo by return mail, but sold the bark on the 24th to another party. This constituted a breach of his offer.

Plaintiff's unsuccessful effort to induce defendant to perform cannot be considered tantamount to keeping the contract alive for the benefit of both parties. Plaintiff insisted upon performance or full damages for the breach. He did not secure performance, so he is relegated to his only other remedy, damages.

We think the trial court erred in finding that the place of delivery was at Monico, Wisconsin. Defendant in his first letter offered to sell the bark f. o. b. Buffalo for $13.50 per cord. This price was not satisfactory to plaintiff. He suggests he would pay $12 per cord in his letter of June 28th, but in his letter of July 2d he says $12 per cord "Deld

Rochester rate" is all the market will stand this season, and it is this offer that the defendant accepts. He therefore agrees to deliver bark at any point having a Rochester rate for $12 per cord. His contract is not complete till he makes such delivery. He must pay the freight and deliver before he can demand his $12 per cord. Nothing is said about any price per cord in Wisconsin. The price is fixed as of the place of delivery. In such a case sub. 5, sec. 1684*t*—19, Stats., applies. It provides :

"If the contract to sell requires the seller to deliver the goods to the buyer, or at a particular place, or to pay the freight or cost of transportation to the buyer, or to a particular place, the property does not pass until the goods have been delivered to the buyer or reached the place agreed upon."

See, also, *McLaughlin v. Marston,* 78 Wis. 670, 47 N. W. 1058, and *Southern F. & G. Co. v. McGeehan,* 144 Wis. 130, 128 N. W. 879. Here the contract required the seller to ship to a designated place and to pay the freight to such place. Unless provision to the contrary is made, title passes with delivery. *Gehl v. Peycke Bros. C. Co.* 158 Wis. 494, 149 N. W. 275. Here delivery was to be made at a place having a Rochester rate designated by plaintiff. Defendant asked for shipping directions and plaintiff named Olean, New York, a point having a Rochester rate. That then was the place of delivery.

Plaintiff's measure of damages was the difference between the contract price and the market price of the bark at the place of delivery and at the time of the breach. Sub. 3, sec. 1684*t*—67, Stats.; *Southern F. & G. Co. v. McGeehan,* 144 Wis. 130, 128 N. W. 879; *Pope M. Co. v. Sadek,* 149 Wis. 394, 135 N. W. 851. No specified times of delivery are contained in the letters. It was contemplated that the major part of the bark could not be shipped till it could be hauled to

the railroad on sleighs.    Therefore, since no time was fixed for delivery, the time of refusal governs as to date of market price measuring damages.    *Ibid.*

The evidence shows that the market price of bark at Olean, New York, at the time of the breach was $13.44 per cord of 2,240 pounds each.    Plaintiff's measure of damages, therefore, was the difference between the contract price of $12 per cord and the market price of $13.44 per cord, or $1.44 per cord.    On 1,000 cords this amounts to $1,440, for which sum, with interest thereon from July 24, 1915, at six per cent. per annum, he is entitled to judgment.    *Vogt v. Schienebeck,* 122 Wis. 491, 100 N. W. 820; *Pope M. Co. v. Sadek,* 149 Wis. 394, 135 N. W. 851.

*By the Court.*—The judgment is modified by inserting in lieu of the words "one hundred forty-three and 97-100 dollars ($143.97), with interest from the 1st day of September, 1915, which interest amounts to seventeen and 84-100 dollars ($17.84), in all the sum of one hundred sixty-one and 81-100 dollars ($161.81)," the following: "fourteen hundred and forty dollars, with interest thereon at six per cent. from July 24, 1915, which interest amounts to $218.40, in all the sum of sixteen hundred and fifty-eight and 40-100 dollars," and by inserting in lieu of the words "two hundred twenty-three and 61-100 dollars ($223.61)," at the end of the judgment, the words "seventeen hundred twenty and 21-100 dollars ($1,720.21)," and as so modified is affirmed, with costs to the plaintiff.