BEHLING, Respondent, vs. ROCK COUNTY SUGAR COMPANY, Appellant.

*April 9—May 12, 1925.*

*Sales: To grow and deliver sugar beets: Parol evidence to vary contract: Delivery prevented by weather conditions: Who shall furnish cars for shipping.*

1. A written contract for the growing of sugar beets for sale to defendants, to be harvested and delivered as the buyer should direct, could not be varied by proof of a prior oral "advice" by the buyer's agents that the seller would be permitted to begin harvesting and delivering the beets on or before a certain date. p. 100.
2. Where defendant did not exercise its contract right to direct the time for beginning the harvesting and delivering of such beets unreasonably and arbitrarily, plaintiff, who was prevented by weather conditions from delivering during the time specified, is not entitled to pay for undelivered beets thereby lost. p. 100.
3. The contract providing that the seller should deliver the beets f. o. b. cars at his shipping station, the seller was required to furnish cars at his own expense, in the absence of any provision to the contrary. p. 101.

APPEAL from a judgment of the circuit court for Rock county: GEORGE GRIMM, Circuit Judge. *Reversed.*

The plaintiff is a farmer; the defendant is a manufacturer of beet sugar, having its factory and principal place of business at Janesville, Wisconsin. On April 13, 1921, the plaintiff, who resides near Richmond station, entered into a memorandum agreement with the defendant, by the terms of which it was provided that the plaintiff would grow twenty-two acres of sugar beets and deliver them f. o. b. cars at the railroad station. The contract contained the usual stipulations found in contracts of that character, but it is not necessary for us to set out the entire contract. Among other things the contract provides:

"The beets shall be harvested and delivered at such times and in such quantities as may be directed by the company, and all beets not delivered to said *Rock County Sugar Company* prior to November 20th shall be *properly pitted by the grower,* which shall mean covered sufficiently to prevent freezing, withering, and consequent reduction in weight and loss of sugar. The company shall not be liable to receive or pay for beets that are rotten or otherwise unfit or undesirable for making sugar."

The amount of acreage was subsequently increased by oral agreement to twenty-eight and one-half acres. It appears without dispute that the plaintiff planted and cultivated the agreed acreage; that the harvesting of the crop was begun about October 15th; that there was delivered a large amount of beets which were paid for. This action was begun to recover the value of certain undelivered beets which at the contract price, less the expense of delivery, would have brought $2,036.50, according to the finding of the trial court. It was the contention of the plaintiff that the defendant was liable for the beets which were not delivered because of an oral understanding or arrangement had between the parties at the time of the making of the contract under and by virtue of which the plaintiff was to be permitted to begin the harvesting and delivery of his beets some time between the 25th day of September and the 1st day of October of the year in which the contract was made. It

appears that the failure of the plaintiff to complete the delivery was due mainly if not entirely to the very unusual weather conditions which prevailed at the time the plaintiff undertook to harvest the crop; the season was unusually wet, the ground in which the beets were planted was low, and by reason of the extraordinary rainfall it was practically impossible to harvest the crop. To have harvested it under the conditions as they prevailed would have been very expensive and it was finally given up, and on the 12th day of December, 1921, the defendant having continued to operate its plant for some days in order to give plaintiff an opportunity to deliver the beets, the plant was closed and the undelivered beets became a total loss.

Upon the issue the court found as follows:

"3. That owing to the circumstances under which the plaintiff would have to grow and deliver the beets it was necessary that he should be permitted to begin harvesting and delivering the beets to be grown by him on or about October 1st following in order to complete the delivery 'before freezing weather' as contemplated by the agreement.

"4. That during the negotiations and at the time of the signing of the agreement the defendant's representatives who were then soliciting the plaintiff to grow beets for the defendant advised plaintiff that, owing to the location of his farm with reference to the delivery station and the character of the highway leading from his farm to the station—a situation with which defendant's representatives were entirely familiar,—he would be permitted to begin harvesting and delivering the beets to be grown by him about the 25th day of the following September or the 1st day of October.

"5. That relying upon defendant's exercise of its right to direct the time for the beginning of the harvesting and delivery of the beets thus made, the plaintiff entered into said agreement, and thereafter raised twenty-eight and one-half acres of beets for delivery to the defendant.

"6. That it was in 1921, and still is, the usual custom of the beet-sugar manufacturing industry to direct harvesting and delivery to begin when, by chemical test made by the manufacturer, it was ascertained that the sugar content of

the beets had reached approximately thirteen per cent., but that when seasonal conditions demanded, the harvesting would be ordered to begin when the sugar content of the beets was still as low as eight to ten per cent., or even less, as was in fact done in 1921.

"7. That sugar beets may safely be stored at the factory for several weeks before they are used without material depreciation in sugar content or otherwise.

"8. That the chemical test made of plaintiff's beets about the 25th day of September showed a sugar content of from eight per cent. to ten per cent.; that a frost occurred in the latter part of September and another on the 2d or 3d day of October; that frost hastens the maturing, that is, the forming of sugar in the beet; that on October 1st plaintiff's beets, in the judgment of experienced growers, had the appearance of being fully matured; that the defendant made tests of the beets of its growers generally, commencing about September 20th, and repeated the same from time to time thereafter at intervals of about a week up to October 15th, and found that, owing to weather conditions, the sugar content of the beets of its growers generally was not increasing; but whether the plaintiff's beets were among those which received a further test after the one made in September does not appear with any degree of certainty from the testimony.

"9. That owing to the advance of the season the defendant determined that, although the sugar content of the beets generally of the beets grown for it that season was still far below the approved percentage, it would begin its 'campaign,' and thereupon ordered harvesting to begin on October 15th.

"10. That the plaintiff began lifting and preparing his beets for shipment on October 15th and was ready to begin delivery a few days thereafter, but that the defendant failed to provide cars for loading until October 26th; that from October 26th until December 12th when he had been ordered to stop shipping he harvested and delivered beets with reasonable expedition and as fast as was possible under the attending circumstances which both parties had in contemplation at the time the agreement was entered into.

"11. That on December 12th, the date of plaintiff's last shipment, all of the beets had been harvested and were ready for shipment, but that only about ten acres of them had been

shipped—the remaining eighteen and one-half acres remaining piled up in the field.

"12. That had the plaintiff been permitted to begin harvesting and delivery on or about October 1st he would have been able to deliver all of his beets before the close of the defendant's 'campaign.'

"13. That the defendant exercised its contractual right to direct the time for beginning the harvesting and shipping of the beets solely with regard to its own interests and profits, arbitrarily and unreasonably and without regard to the attending circumstances and cultural conditions under which the plaintiff was performing his part of the contract and his, to the defendant known, limitations in regard to delivering the beets."

Upon these findings judgment was entered for the plaintiff for $2,036.50, with interest and costs, from which judgment the defendant appeals.

For the appellant there was a brief by *Jeffris, Mouat, Oestreich, Avery & Wood* of Janesville, and oral argument by *Otto A. Oestreich* and *L. A. Avery.*

For the respondent there was a brief by *Hill, Thomann & Beckwith* of Madison, and oral argument by *D. V. W. Beckwith.*

ROSENBERRY, J.   The principal error assigned in this case is that the court erred in admitting testimony as to the oral stipulation and agreements made between the parties prior to and contemporaneously with the making of the written contract.   The findings of fact are skilfully drawn to evade this issue.   The court found that during the negotiations and at the time of the signing of the agreement the defendant's representatives "advised" plaintiff that he would be permitted to begin harvesting and delivering beets about the 25th day of the following September or the 1st day of October, and that, relying upon defendant's exercise of its right to direct the time for the beginning of the harvesting and delivery of the beets thus made, the plaintiff entered into

said agreement. We are not enlightened as to how or in what manner a party may exercise a right conferred upon him by a contract not yet made; or how a conclusive election may be made under a stipulated option which has no existence until the contract is signed. Calling a contemporaneous oral agrement "advice" does not alter its essential legal character. The established rules of law cannot be evaded in that way. The court does not find that the right to designate the time and quantity of deliveries to be made under the contract was exercised after it was made. Nothing is clearer than that the finding made by the trial court is in legal effect a finding that the terms of the written contract were varied by oral stipulation made prior to or contemporaneously with the signing of the contract and in clear contradiction of its terms.

This matter was thoroughly considered and reviewed in *Derbeck v. Albright,* 186 Wis. 515, 203 N. W. 337 (decided April 7, 1925). With the evidence relating to the so-called "advice" given by defendant's agents at the time of the negotiations and the making of the contract out of the case, we find nothing which sustains the conclusion of the trial court that the defendant exercised its right to direct the time for beginning the harvesting and shipping of the beets unreasonably and arbitrarily. On the contrary, the evidence discloses that the defendant acted with diligence and discretion, did everything in its power to aid the plaintiff in making delivery of the beets, slowed down its factory at the end of its so-called campaign in order that the beets might be received, and otherwise evidenced its good faith in carrying out the contract. By the terms of the contract the plaintiff was only to receive payment for the beets suitable for the making of sugar actually delivered upon cars. Having failed to perform the contract, plaintiff is not entitled to recover from the defendant. The plaintiff no doubt sustained a heavy loss. It appears quite clearly that this loss was due to unfavorable weather conditions, but that was a hazard which the plaintiff and not the defendant assumed.

Reference is also made in the findings of the court to the fact that the defendant failed to provide cars for loading until October 26th. The contract provides that the seller shall raise twenty-two acres of sugar beets and "deliver them to the *Rock County Sugar Company* f. o. b. cars at grower's shipping station." There being nothing in the contract to indicate to the contrary, it was the duty of the seller to furnish the cars at his own expense. *Vogt v. Schienebeck,* 122 Wis. 491, 100 N. W. 820; *Hurst v. Altamont Mfg. Co.* 73 Kan. 422, 85 Pac. 551, 6 L. R. A. n. s. 928; *R. J. Menz L. Co. v. E. J. McNeeley & Co.* 58 Wash. 223, 108 Pac. 621, 28 L. R. A. n. s. 1007; *Culp v. Sandoval,* 22 New Mex. 71, 159 Pac. 956, L. R. A. 1917A, 1157.

The company being under no obligation to furnish cars, there could be no breach of its contract in that respect.

*By the Court.*—Judgment is reversed, and cause remanded with directions to dismiss the plaintiff's complaint.