# DULUTH SUPERIOR MILLING COMPANY v. AMERICAN LINSEED COMPANY.[1]

January 14, 1927.

No. 25,727.

Under circumstances shown seller of mill feed was not at fault in failing to provide water carriage to point designated by buyer at close of navigation season on Great Lakes and it could recover damage sustained by it when buyer later refused to accept the feed.

In September, 1923, the defendant contracted to purchase, and the plaintiff to sell, 200 tons of mixed feed, to be delivered f. o. b. at the plaintiff's mill in Superior, Wisconsin, in November, 1923. The defendant was to determine the destination of the feed and the time of shipment, and did so on November 23, 1923, when it directed shipment to a Lake Huron port, in Ontario. There was but one line of boats going from the head of the lakes to the Lake Huron port. The plaintiff exercised all possible effort to get the navigation line to carry the feed. It promised to take the feed, but failed to do so. The "f. o. b." provision in the contract did not determine absolutely which party to the sale was to provide the carrier, though ordinarily the duty is cast upon the seller. Construing the contract in the light of the circumstances in evidence, it is *held* that the duty was not upon the plaintiff, that it was not at fault in failing to provide a carrier and that it was entitled to recover the damage it sustained when the defendant later refused to accept the feed.

Sales, 35 Cyc. p. 197 n. 82; p. 250 n. 62.

Defendant appealed from a judgment of the district court for St. Louis county, Kenny, J. Affirmed.

*Allen & Fletcher* and *G. A. Timerman,* for appellant.

*McClearn & Gilbertson,* for respondent.

DIBELL, J.

Action to recover damages for the refusal of the defendant to complete a contract for the purchase of mill feed from the plaintiff. There was judgment for the plaintiff and the defendant appeals.

[1] Reported in 212 N. W. 200.

On September 12, 1923, the defendant contracted to purchase, and the plaintiff to sell, 200 tons of mixed feed at $30 per ton, to be delivered f. o. b. at the plaintiff's mill in Superior, Wisconsin, in November, 1923. The defendant was to determine the destination of the feed and the time of shipment. Both the plaintiff and defendant had offices at Duluth.

On November 23, 1923, the defendant notified the plaintiff to ship to Sarnia, on Lake Huron, Ontario, by the Northern Navigation Company. This was the only transportation line from the head of the lakes to the point of destination. One boat of this line left the head of the lakes on November 23d; another on November 27th; and another, the last of the season, on November 30th.

The plaintiff at all times had the feed in its mill sacked and ready for delivery to the carrier. The loading would have taken but a few hours, perhaps two hours. The plaintiff did everything to get the navigation company to carry the feed. The defendant co-operated. The navigation company gave its promise, but failed to keep it, the season of navigation closed, and the feed could not go by boat. No further shipping directions were given. Some resultless negotiations between the parties followed. On June 19, 1924, the defendant wrote the plaintiff, stating that it elected to treat the contract of sale canceled, because of the plaintiff's failure to deliver within the contract time. The plaintiff then sold at the market price, and had judgment for its loss amounting to something in excess of $2,000.

The question whether the plaintiff or the defendant should bear the loss consequent upon the failure of the navigation company to take the feed depends upon the contract of the parties; or, putting it in another way, the question of liability depends upon whose duty it was to furnish the boat at the dock. It is not, as we view it, a case of impossibility of performance within H. Hackfeld & Co., Ltd. v. Castle, 186 Cal. 53, 198 Pac. 1041, or The Tornado, 108 U. S. 342, 2 Sup. Ct. 746, 27 L. ed. 747, or the cases discussed in Williston, Sales (2d ed.), § 280a (p. 600), excusing both parties, and we omit a discussion of the principles involved in such situations.

The "f. o. b." used in the contract meant that the plaintiff would load the feed, which was in sacks, onto trucks, and that stevedores furnished by the navigation company would load into the boat. The f. o. b. did not determine absolutely which party to the sale was to provide the carrier. That is a question to be determined upon a construction of the contract as a whole. We take it, however, that a contract of sale, the merchandise to be delivered f. o. b. cars, intends generally that the seller and not the buyer will furnish the cars. The seller is usually at the place of delivery f. o. b., and the buyer quite often is not. The seller easily gets the cars and it is inconvenient for the buyer to provide them. The general rule has come to be as stated. It is sufficiently illustrated by Behling v. Rock County Sugar Co. 187 Wis. 95, 203 N. W. 908, and Hurst v. Altamont Mnfg. Co. 73 Kan. 422, 85 Pac. 551, 6 L. R. A. (N. S.) 928, 117 Am. St. 525, 9 Ann. Cas. 549, and the cases there cited. And see notes 6 L. R. A. (N. S.) 928, and L. R. A. 1917A, 1163. But, while the general rule seems to put many individual cases into a definite class, there are many cases which must be governed by the particular contract interpreted in the light of surrounding circumstances.

In the Hackfeld case, 186 Cal. 53, 198 Pac. 1041, cited by both parties, the court said:

"The question is one as to the intention of the parties, as to what they contemplated. The expression f. o. b. in and of itself throws no light upon it. The expression merely makes it the duty of the seller to load at his own expense. But whether the means of conveyance on which the goods are to be loaded are to be furnished by him or by the buyer is not indicated by the requirement. It would seem that in the absence of any express provision on the point (and usually there is none), what the parties contemplated must be determined by what was reasonable under the particular circumstances of each case. When the buyer is not at the point of shipment and when between that point and the point of destination there is a regular and customary method of transportation with

fixed rates and uniform conditions, so that it is practically immaterial to the buyer whether he or the seller arrange for the transportation, and there is no difficulty and no substantial burden in arranging for it, the fact that the seller is on the ground and it is convenient for him to arrange for it, when it is not convenient for the buyer, would seem to make it reasonable that the seller should attend to the matter. This is generally the situation in the case of shipments by rail. It is, however, not the situation, as a rule, in the case of shipments by sea. For one thing, there is usually no uniformity of freight rates, so that the buyer, who, of course, must pay the freight under an f. o. b. contract, is immediately concerned with what arrangement may be made for transportation. On the other hand, the arrangement is a matter of indifference to the seller. Under these circumstances it would seem to be reasonable to conclude that the parties contemplated that since the buyer is the party interested, he should attend to arranging for the transportation either directly or by instructions to the seller."

The defendant was in convenient touch with shipping conditions at the head of the lakes. The contract gave it the right to designate the shipping destination. This it did on November 23d. The only boat line reaching the destination was that of the Northern Navigation Company. That was the line specifically designated by the defendant. The boat that arrived on November 23d cleared the same evening. It seems hardly possible that a shipment could be made on that boat. There were only two more boats and two other dates, the 27th and the 30th. The plaintiff, doing all it could, and with the co-operation of the defendant, was unable to get the shipment taken during the navigation season. Under such circumstances it should not be held that the duty of providing a boat rested at all hazards upon the plaintiff, at the very close of navigation, to meet the direction of the defendant as to destination and navigation line to be used.

Judgment affirmed.